**Fredye Long ALFORD, Appellant,**

v.

**Lynn Thomas THORNBURG, Jr., and Michael R. Augustine, Appellees.**

No. 06–02–00168–CV.

Court of Appeals of Texas,
Texarkana.

Submitted July 10, 2003.

Decided Aug. 7, 2003.

Rehearing Overruled Aug. 26, 2003.

Bruce A. Condit, Condit, Peek & Young, Texarkana, for appellant.

J. Dennis Weitzel, Canterbury, Stuber, et al., Dallas, for appellee.

Lynn Thomas Thornburg Jr., Mount Ida, AR, pro se.

Before MORRISS, C.J., ROSS and CARTER, JJ.

1. Alford has, at other times relevant to this proceeding, had the last name Lynch. For consistency, we refer to her throughout as Alford.

## OPINION

Opinion by Chief Justice MORRISS.

Fredye Long Alford[1] (Alford) and Thomas Lynn Thornburg, Jr. (Thornburg) were divorced on October 17, 1995. While negotiating the division of property, the parties agreed Thornburg owed Alford $85,000.00. Alford agreed to collect that $85,000.00 through trust fund proceeds that were to be distributed to Thornburg, provided the proceeds would bypass him and go directly to her.[2] Specifically, the divorce decree provided, in pertinent part:

[t]he sum of Eighty Five Thousand and No/100 Dollars ($85,000.00) cash payable by Lynn Thomas Thornburg, Jr. upon the first to occur of the following events: a. receipt by Lynn Thomas Thornburg, Jr. of **the balance of his inheritance out of a trust fund administered by Mike Augustine,** said sum to be secured by a lien to be placed upon the proceeds of such inheritance OR b. upon the death of Lynn Thomas Thornburg, Jr., prior to his receipt of such inheritance, by means of an assignment in favor of Fredye Mac Long as the irrevocable beneficiary of $85,000.00 out of proceeds from a life insurance policy on the life of Lynn Thomas Thornburg, Jr. . . . .

(Emphasis added). Pursuant to their agreement, Thornburg executed a "designation of lien on proceeds of inheritance due to Lynn Thomas Thornburg, Jr." (the Assignment), which directed Michael Augustine (Augustine), as trustee, to pay the $85,000.00 directly to Alford once the trust was funded. The trust document, however, contained a spendthrift clause that made invalid any effort by Thornburg to assign the trust proceeds.[3]

2. Thornburg's stepmother had established a trust that would be funded on her death, and Thornburg was designated as a beneficiary.

3. At the time the Assignment was executed, Alford was unaware of the spendthrift clause,

Augustine, as trustee, filed a petition in the Superior Court of the State of California, County of Los Angeles, in case number MP 000 551, to determine the validity of the Assignment in light of the spendthrift clause, and, by an order dated July 3, 2000, that court declared the Assignment void and directed Augustine that, on funding of the trust, he was not to pay the funds directly to Alford.

On February 27, 1997, Thornburg filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Texas. On filing for bankruptcy, a stay was automatically imposed on all entities, preventing the "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor, [Thornburg], that was or could have been commenced before the commencement of the case." 11 U.S.C.A. § 362 (1993). Pursuant to Section 362(d), however, the bankruptcy court subsequently granted Alford limited relief from the automatic stay. 11 U.S.C.A. § 362(d).

After getting relief from the stay in bankruptcy, Alford filed suit against Thornburg for the enforcement of a portion of the divorce decree pertaining to a life insurance policy that was ordered maintained by Thornburg. Alford obtained a final judgment in that proceeding against Thornburg, and, without permission from the bankruptcy court, Alford filed an abstract of that judgment in Bowie County, Texas. In addition, while Thornburg was still under the protection of the automatic stay, Alford filed a notice of lis pendens, without the permission of the bankruptcy court, on May 9, 2000, against a piece of property owned by Thornburg in Bowie County.[4] On March 12, 2002, the bankruptcy court entered an order and an accompanying opinion, declaring the abstract of judgment and the lis pendens void because they violated the automatic stay. Alford has appealed the bankruptcy court's decision, and that appeal is currently pending.

On August 27, 1999, Alford filed this cause of action.[5] In response, Thornburg filed a "motion for leave to request release of judgment and removal of lis pendens from respondent's homestead," and the court ordered Alford to release the abstract of judgment and the lis pendens.

Alford contended she would have collected the $85,000.00 in a different manner had she known the trust proceeds would have to actually be distributed to Thornburg before she received payment. In her second amended petition, she alleged Thornburg was guilty of fraud, civil conspiracy, and breach of contract, and that Augustine was guilty of fraud and civil conspiracy. In the alternative, Alford contended she was entitled to a rescission and/or reformation or a bill of review with regard to the divorce decree. The trial court granted summary judgment in favor of Thornburg and Augustine, and Alford brings this appeal.

Alford asserts the trial court erred (1) by issuing, without subject matter jurisdiction, an oral order enforcing an appealed bankruptcy ruling; (2) by issuing that order without notice or an evidentiary hearing, thus denying Alford due process of law; (3) by considering Thornburg's evi-

and it is undisputed that Augustine was the attorney responsible for drafting the trust instrument.

4. Thornburg was not discharged from bankruptcy until June 19, 2002.

5. The bankruptcy court ruled that, because the present cause of action was declaratory in nature, it did not violate the automatic stay.

dence in support of his motion for summary judgment; (4) by granting Thornburg's motion for summary judgment; (5) by striking Alford's affidavits filed in response to Augustine's motion for summary judgment; and (6) by granting Augustine's motion for summary judgment.

### 1. *Subject Matter Jurisdiction*

On appeal, Alford contends that, because the bankruptcy court's order, voiding the abstract of judgment and lis pendens, was pending on appeal, the state court did not have subject matter jurisdiction to order a release of the same.[6] We disagree.

■ It is well settled that the mere pendency of an action in federal court involving the same parties and issues is not a reason for abating the subsequent state court proceeding. *Williamson v. Tucker*, 615 S.W.2d 881, 885–86 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.); *Byrnes v. Univ. of Houston*, 507 S.W.2d 815, 816 (Tex.Civ. App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.). As a matter of comity, however, it is the custom for the court in which the later action is instituted to stay proceedings therein until the prior action is determined or, at least, for a reasonable time, and the custom has practically grown into a general rule which strongly urges the duty on the court in which the subsequent action is instituted to do so. *Williamson*, 615 S.W.2d at 885–86. While the prudent course of action would have been to request a stay of the proceeding and allow the federal court to reach a final determination on the issue, which could have led to a res judicata defense, neither party requested the state court to stay the proceeding. As a result, the state court was not precluded from exercising subject mat-

ter jurisdiction over this dispute. We overrule Alford's first point of error.

### 2. *Due Process*

In her next point of error, Alford contends that, if the court is found to have properly exercised its jurisdiction, the trial court erred by rendering its order without notice or a hearing. In the present case, at a hearing conducted August 12, 2002, the trial court addressed the issue concerning the abstract judgment and lis pendens. Specifically, the following exchange took place between the court and Alford's counsel:

[Court]: Let me get back to see where we are on some other things here. Your other—the lis pendens notice.

[Thornburg]: Yes. And it's a motion for lien to request the release of judgments from removal of the lien. We are sitting there waiting to close, Your Honor, and we can't.

[Court]: Hold your argument on that. I think I know basically—I've heard enough on that point before. Let me see why Mr. Peek [Alford's counsel] does not want to release you from that, or maybe he does. Mr. Peek?

[Mr. Peek]: Judge, I think the bankruptcy court ruled on that. I mean, there's a bankruptcy order saying those are void.

[Court]: Well, that's what I read, but has anything been done about it?

[Mr. Peek]: Not other than her bankruptcy attorney had some correspondence. I mean, the bankruptcy court didn't order her to do anything.

[Court]: I know the bankruptcy court did not. I read the order, and I read the order finding. But in order to clean

---

**6.** In support of her contention, Alford relies on *Samara v. Samara*, 52 S.W.3d 455 (Tex. App.-Houston [1st Dist.] 2001, pet. denied). *Samara*, however, does not support the proposition for which it was cited.

up that record, we need for her to release that.

[Mr. Peek]: Probably so, Judge.

The parties continued to discuss this issue, and eventually Alford executed a release of both her abstract judgment and lis pendens.

■ Under Rule 33.1 of the Texas Rules of Appellate Procedure, an appellant must have made a timely objection, stating the specific grounds for the ruling sought, and receive a ruling from the trial court on that objection in order to preserve error for appellate review. TEX.R.APP. P. 33.1. Even constitutional errors, such as due process complaints, are waived if not raised first in the trial court. TEX.R.APP. P. 33.1; *Birdo v. Ament*, 814 S.W.2d 808, 811 (Tex.App.-Waco 1991, writ denied).

During the course of the proceedings at the trial court level, Alford failed to assert an objection that her constitutional right to due process had been violated. Because Alford did not raise that complaint in the trial court, she has failed to preserve error for appellate review. *See* TEX.R.APP. P. 33.1. We overrule Alford's second point of error.

3. *Summary Judgment Evidence*

In her next point of error, Alford contends the trial court erred by considering factual statements, exhibits, and pleadings attached to Thornburg's motion for summary judgment. While Alford objected to the consideration of Thornburg's attachments, there is no trial court ruling affirmatively shown in the record. In *Trusty v. Strayhorn*, 87 S.W.3d 756, 760 (Tex. App.-Texarkana 2002, no pet.), this Court held that

> the party objecting to summary judgment proof still has the burden to obtain a ruling on that party's objections, but that the burden is satisfied if (1) the record affirmatively indicates that the trial court ruled on the objections to the summary judgment proof in granting summary judgment, or (2) the grounds for summary judgment and the objections to the summary judgment proof are of such a nature that the granting of summary judgment necessarily implies a ruling on the objections.

This Court reasoned that, when a traditional motion for summary judgment is filed and only one piece of evidence is offered in support of summary judgment and the respondent objects to that evidence, if the trial court grants summary judgment, it can be implied that it also overruled the objection, otherwise there would have been no evidence in support. *See Blum v. Julian*, 977 S.W.2d 819, 823 (Tex.App.-Fort Worth 1998, no pet.).

■ Alford contends there is an affirmative showing in the record that the trial court ruled on her objections because the order provided as follows: "the trial court considered the Motion and evidence attached thereto and the Response of the Plaintiff and the argument of counsel." However, this Court, in *Trusty*, expressly held that, merely because the trial court considered the objections, that alone is not a sufficient indication on the record that those objections were ruled on. *Trusty*, 87 S.W.3d at 761. Further, according to this Court's reasoning, there cannot be an implied ruling because Alford made numerous objections and Thornburg asserted more than one ground for summary judgment. Without an affirmative indication on the record, this Court has no way of determining which objections received adverse rulings. As a result, Alford has failed to preserve error for appellate review. TEX.R.APP. P. 33.1.

Beyond the attachments to Thornburg's motion for summary judgment, Alford also contends the trial court erred by allowing

Thornburg to testify at the summary judgment hearing. Again, in order to preserve error, an appellant must have made a timely objection stating the specific grounds for the ruling sought and receive a ruling from the trial court on that objection. *Id.* Alford contends the following exchange was sufficient to preserve error:

[Alford's Counsel]: Your Honor, we would object. That's eliciting testimony. As the court knows, in a summary judgment hearing there is no live testimony.

[Thornburg]: Will the court allow me to proffer Mr. Potter's affidavit stating the same?

[Court]: It hadn't been submitted to Mr. Peek before this time though, has it?

[Thornburg]: No, ma'am.

[Court]: No. I am looking for what Judge Sharp said in that bankruptcy. I need my own filing system with all of these different orders.

If anything, it appears the trial court sustained Alford's objection, but in any event, the trial court clearly did not make an adverse ruling on Alford's objection. Accordingly, she has failed to preserve error for appellate review. *See* TEX.R.APP. P. 33.1. We overrule Alford's third point of error.

### 4. *Thornburg's Motion for Summary Judgment*

In her second amended petition, Alford alleges Thornburg is guilty of fraud, civil conspiracy, and breach of contract. Further, Alford contends that, in the alternative, she is entitled to a bill of review, requesting the pertinent portion of the divorce decree to be cancelled, or rescission and/or reformation of the divorce decree. In response, Thornburg contended he was entitled to summary judgment because (1) all of Alford's claims were discharged in bankruptcy, (2) the case was not ripe for consideration, and (3) her suit was barred by their 1996 agreed final settlement, release, and order. The trial court granted Thornburg's motion, we believe, improperly.

■ A summary judgment is reviewed de novo. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). The question on appeal is not whether the summary judgment proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. Gen. Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970). When reviewing a summary judgment, this Court must adhere to the following standards: (1) the movant has the burden of showing there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed issue of material fact precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant. *Limestone Prods. Distrib., Inc. v. McNamara,* 71 S.W.3d 308, 311 (Tex.2002). When the motion for summary judgment asserts several grounds and the trial court does not specify on which ground the motion was granted, an appellant must show that each independent ground is insufficient to support summary judgment. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

#### a. *Discharge in Bankruptcy*

In Thornburg's 1997 bankruptcy, Alford was initially listed as an unsecured creditor for the amount of $85,000.00. Pursuant to an agreement reached by the parties, however, the bankruptcy court entered an order stating that the

$85,000.00 was Alford's separate property and was not included in the bankruptcy estate.

■ Based on that order, Thornburg contended Alford was no longer entitled to the $85,000.00. It is clear that result was not the bankruptcy court's intention. The same rules of interpretation apply in construing the meaning of a court order or judgment as in ascertaining the meaning of other written instruments. *Lone Star Cement Corp. v. Fair,* 467 S.W.2d 402, 404–05 (Tex.1971). The determinative factor is the intention of the court. *Id.* If a judgment is unambiguous with no room for interpretation, it is our duty to declare its effect in light of the literal language used. *Ellis v. Mortgage & Trust, Inc.,* 751 S.W.2d 721 (Tex.App.-Fort Worth 1988, no writ). The order merely states that the $85,000.00 is Alford's separate property, not part of the bankruptcy estate; therefore, that proceeding was not the proper place to determine when and where those funds should be distributed. The bankruptcy court did not intend to preclude Alford from collecting the $85,000.00, but simply to exclude her right as a claim in bankruptcy to be collected from the bankruptcy estate or discharged. That intention is further evidenced in the bankruptcy court's memorandum opinion, in which it stated the automatic stay did not prohibit Alford from proceeding with the present cause of action. Accordingly, the trial court erred in its interpretation of the order, and summary judgment was improper to the extent it was granted based on discharge in bankruptcy.

b. *Ripeness*

■ In order for a cause of action to be ripe for determination, the facts must have sufficiently developed to show that an injury has already occurred. *Patterson v. Planned Parenthood,* 971 S.W.2d 439, 442 (Tex.1998). If the injury is contingent on

the happening of future events and is therefore uncertain, the cause of action is not ripe for determination, and to proceed on the merits of such a cause of action would require the court to issue an advisory opinion, which is expressly prohibited by the Texas Constitution. TEX. CONST. art. II, § 1 (separation of powers), art. IV, §§ 1, 22 (attorney general is part of executive department and is empowered to issue advisory opinions to governor and other officials), art. V, § 8 (district court jurisdiction); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex. 1993) (explaining "we have construed our separation of powers article to prohibit courts from issuing advisory opinions because such is function of executive rather than judicial department").

Thornburg contends this cause of action is not ripe because no harm will occur until Thornburg's stepmother dies and the trust is funded with her life insurance proceeds. Further, Thornburg contends the harm is contingent on the happening of future events, because if Thornburg predeceases his stepmother, Alford would be paid from his life insurance policy and the validity of the Assignment would be moot. Alford, however, argues that her agreement to the terms of the divorce decree was contingent on the validity of the Assignment, and if she had known the trust proceeds had to pass through Thornburg before she received payment, she would have pursued other methods of collecting the $85,000.00. Therefore, Alford contends the harm occurred when the California court declared the Assignment null and void.

■ In deciding whether there is a disputed issue of material fact precluding summary judgment, evidence favorable to the nonmovant will be taken as true, and every reasonable inference must be indulged in favor of the nonmovant. *McNa-*

*mara,* 71 S.W.3d at 311. According to Alford's allegations, an injury has already occurred because she was not given the benefit of her bargain. In other words, the divorce decree would not have any language concerning trust proceeds or life insurance policies if Alford had known the trust proceeds would have to pass through Thornburg before reaching her. Because this Court must take as true all evidence in Alford's favor and resolve all reasonable inferences and doubts in her favor, this cause of action is ripe for determination, and the trial court erred to the extent summary judgment was granted based on the doctrine of ripeness. *See id.; Patterson,* 971 S.W.2d at 442.

### c. *Final Settlement Release and Order*

On October 14, 1996, because of numerous lawsuits arising out of their 1995 divorce decree, Alford and Thornburg agreed to a final settlement and release that was reduced to a court order. The final settlement and release provided, in pertinent part:

> The parties have both announced to the Court that they wish to settle all controversies and disputes between them and go forward with their lives. Accordingly, [Alford] and Thornburg hereby release each other from any and all claims, charges or other complaints against the other which currently exist or may arise out of the parties' relationship from 1991 forward, save and except [Alford]'s right to payment of $85,000.00 from Thornburg under the terms of the Decree of Divorce, and Thornburg's obligation with respect to the payment of premiums of a life insurance policy for payment of this amount in the event of his death . . . .
>
> . . . .
>
> IT IS, THEREFORE, ORDERED, that both parties are permanently enjoined from filing any lawsuits, motions or notices against the other party or from asserting any claims, charges or complaints against the other party based upon any matters, other than the rights of [Alford] specifically excluded by agreement above, arising between the parties from 1991 to the date this order was signed.

Based on that order, Thornburg contends Alford is precluded from filing this lawsuit. On the other hand, Alford contends this lawsuit is permissible because (1) the order expressly allows for a cause of action to be brought for the purpose of collecting the $85,000.00, and (2) the agreement only bars suits that arose between 1991 and October 14, 1996, and the present cause of action arose in 1999.

■ The same rules of interpretation apply in construing the meaning of a court order or judgment as in ascertaining the meaning of other written instruments. *Lone Star Cement Corp.,* 467 S.W.2d at 404–05. The determinative factor is the intention of the court. *Id.* If a judgment is unambiguous with no room for interpretation, it is our duty to declare its effect in light of the literal language used. *Ellis,* 751 S.W.2d 721. On the other hand, an ambiguous order is construed in light of the motion on which it was granted. *Lone Star Cement Corp.,* 467 S.W.2d at 405.

■ In the present case, the court merely adopted the parties' agreement and gave it the force of a court order. The court intended to allow Alford the opportunity to collect the $85,000.00 in the manner she had bargained for, which was to receive the trust proceeds directly from Augustine. Further, the contemplated Assignment had not been declared invalid at the time the order was entered, and the parties, and the court, should be held to have intended its effectiveness. *See id.* Therefore, based on the court's obvious

intent and based on the plain, unambiguous language of the order, this cause of action was within the exception provided for, and the trial court erred to the extent it granted summary judgment based on the final settlement, release, and order.

### 5. *Summary Judgment Affidavits*

At trial, Augustine objected to three of Alford's affidavits. First, Augustine objected to the affidavit of Rick Lindsey, a Certified Public Accountant, on the ground that it failed to state any facts on which his conclusions were based. Second, Augustine objected to the affidavit of Demaris Hart, Alford's divorce attorney, on the grounds that it failed to state any facts to support her legal conclusions, it contained hearsay, and Augustine never received the third and fourth pages of the affidavit, which included the signature page. Third, Augustine objected to Alford's affidavit on the grounds that it contained legal conclusions and hearsay. The trial court sustained Augustine's objections and struck the affidavits of Lindsey and Hart in their entirety. The trial court, however, only struck portions of Alford's affidavit.

■ Under the Texas Rules of Civil Procedure, supporting and opposing affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tex.R. Civ. P. 166a(f); *see Manges v. Astra Bar, Inc.*, 596 S.W.2d 605, 610 (Tex.Civ. App.-Corpus Christi 1980, writ ref'd n.r.e.). Conclusions of the affiant that have no factual support are insufficient to raise an issue of fact, and hearsay statements contained in affidavits are not competent to serve as summary judgment evidence. *Ryland Group v. Hood*, 924 S.W.2d 120, 122 (Tex.1996); *Youngstown Sheet & Tube*

*Co. v. Penn*, 363 S.W.2d 230, 233 (Tex. 1962).

#### a. *Lindsey's Affidavit*

■ Lindsey's affidavit consisted of the following statements:

Due to life expectancies, there is a definite monetary difference between a right to receive a sum certain upon the death of two people of different ages.

I cannot calculate the definite monetary difference currently because I do not have the birth date of Helen Thornburg.

The basis of an expert witness' opinion may settle a dispute as a matter of law, not the witness' credentials or his or her unsubstantiated opinions. *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex.1999). Lindsey's statement, while admittedly not very extensive, simply states that the right to receive a sum certain at death is valued differently for persons of different ages. That is something a Certified Public Accountant, or anyone else familiar with life expectancy tables, would know. We fail to see any difference Lindsey's affidavit could have made, but the trial court improperly struck Lindsey's affidavit.

#### b. *Alford's Affidavit*

■ The trial court struck the following portions of Alford's affidavit:

I knew Michael Augustine personally, and I trusted his word. He later sent a confirmation letter about the assignment, including my requirement that he submit to the jurisdiction of the Texas courts. This letter I received is dated December 11, 1995.

I relied upon the representations of Michael Augustine and Tom Thornburg that such an assignment could be made in agreeing to take it in the property division of our divorce action. Michael Augustine even told us that we had to do

something in the alternative if Tom predeceased his stepmother. Hence, the language about life insurance in the Decree of Divorce.

The trial court erred by striking these portions of the affidavit. The first sentence contains two simple assertions: Alford's knowing Augustine and her trusting him. Then, beginning with the second line, Alford is merely stating she received a letter from Augustine and the date on which it was received. Alford had personal knowledge of when the letter was received and its contents, and she would be competent to so testify at trial. *See* TEX.R. CIV. P. 166a. Further, the letter was properly authenticated and admitted into evidence.

 Additionally, the last line concerning the statements allegedly made by Augustine to Alford should not have been stricken from the affidavit. Under the Texas Rules of Evidence, a statement is not hearsay if "[t]he statement is offered against a party and is the party's own statement in either an individual or representative capacity." TEX.R. EVID. 801(e)(2). The statement in the affidavit was offered against Augustine, and it purported to be his own. As a result, the statement is properly admissible and should not have been stricken from the affidavit.

Therefore, the trial court erred by striking portions of Alford's affidavit.

### c. *Hart's Affidavit*

 Under the Texas Rules of Civil Procedure, "[e]xcept on leave of court, the adverse party, not later than seven days prior to the day of hearing may file *and serve* opposing affidavits or other written response." TEX.R. CIV. P. 166a(c) (emphasis added). In the present case, Alford filed Hart's affidavit in its entirety with the trial court at least seven days before the hearing. She failed to serve the entire affidavit on Augustine before the seven-day deadline, and she did not request permission from the court to serve the affidavit late. Specifically, Augustine objected to Hart's affidavit at the hearing because he did not receive page three, which included the signature page. *See Perkins v. Crittenden,* 462 S.W.2d 565, 568 (Tex.1970) (unsworn affidavit not competent summary judgment proof). Alford admitted that, through her own error, Augustine had not received page three of Hart's affidavit before the hearing. At that point, it was incumbent on Alford to request leave of the trial court to serve page three of the affidavit on Augustine or, at least, request a continuance in order to respond to the objection. *See Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex.1996) (if nothing in record indicates that late service was with leave of court, it cannot be considered on appeal); *Flanagan v. Martin,* 880 S.W.2d 863, 866 (Tex.App.-Waco 1994, writ dism'd w.o.j.) (when movants for summary judgment file objections to affidavits on day of hearing, nonmovant should ask for continuance for time to respond and failure to do so results in waiver of complaint regarding lack of opportunity to amend affidavit). Because there is nothing in the record indicating Alford did either of these things, the trial court properly did not consider Hart's unsworn affidavit, and Alford has failed to preserve any error for appellate review relative to Hart's affidavit.

### 6. *Augustine's Motion for Summary Judgment*

Augustine contends he is entitled to summary judgment because (1) this cause of action is not ripe for determination, and (2) Alford has failed to produce any evi-

dence of fraud or civil conspiracy.[7] In a no-evidence motion for summary judgment, the nonmovant has the burden to present more than a mere scintilla of evidence raising a genuine issue of material fact. *Haas v. George,* 71 S.W.3d 904, 911 (Tex.App.-Texarkana 2002, no pet.). More than a scintilla of evidence exists when the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995) (citing *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994)). A no-evidence motion for summary judgment is equivalent to a pretrial directed verdict, and the same legal sufficiency review applies. *Tex. Capital Sec. Mgmt., Inc. v. Sandefer,* 80 S.W.3d 260, 264 (Tex.App.-Texarkana 2002, no pet.). Therefore, we consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

a. *Fraud*

In his motion for summary judgment, Augustine alleged there was no evidence to raise a genuine issue of material fact with regard to the following elements of Alford's fraud claim: (1) a material representation from Augustine; (2) the material representation was false; (3) it was made with knowledge of its falsity and made as a positive assertion; (4) it was made with the intent that it be acted on by the plaintiff; and (5) it caused injury to the plaintiff. From our review of the record, however, we find more than a scintilla of evidence raising a genuine is-

sue of material fact with respect to fraud by Augustine.

■ First, there is more than a scintilla of evidence that Augustine made a material representation with knowledge of its falsity to Alford. Alford set forth in her affidavit that Augustine dictated the language to be used in the Assignment, which was later declared void because it violated the spendthrift clause located in the trust. *See McNamara,* 71 S.W.3d at 311 (evidence in favor of nonmovant taken as true). It is undisputed Augustine drafted the trust and was named as trustee. That evidence alone demonstrates that Augustine was aware of the provisions of the trust, yet he still represented to Alford that the type of assignment called for was permissible under the terms of the trust. *See Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 285 (Tex.1995) (any claim of fraud will almost always depend on presence of circumstantial evidence). Alford, however, also introduced a letter she received from Augustine on December 11, 1995, which provides in pertinent part:

> Dear [Alford]:
>
> Pursuant to our conversation of today's date, the fax from [Thornburg], my conversation with [Thornburg], and my conversation with David Potter and Demaris Hart, I am writing this letter to complete my acknowledgment of the lien on trust proceeds which is apparently a part of the divorce settlement between you and [Thornburg].
>
> . . . .
>
> By this letter, I also agree that I will be subject to the jurisdiction of the appropriate Court in Texas with regards to that portion of the Thornburg Irrevoca-

---

7. For the same reasons set forth previously, in part 4 of this opinion, titled *Thornburg's Motion for Summary Judgment,* this cause of action is ripe for determination. Therefore, we will only address whether the trial court properly granted summary judgment with respect to Augustine's no-evidence motion.

ble Insurance Trust proceeds, payable to you pursuant to Tom's assignment.

Clearly, based on that evidence, reasonable minds and fair-minded people could differ as to whether Augustine had made a representation with knowledge of its falsity. Further, it can be inferred from the evidence produced by Alford that Augustine intended for Alford to agree to the divorce settlement based on those representations. And, as previously discussed, Alford has suffered an injury because she would have sought other means to collect the $85,000.00 had she known the Assignment would be declared void. Therefore, Alford raised a genuine issue of material fact, and the trial court erred to the extent summary judgment was granted against her claim of fraud.

### b. Civil Conspiracy

■ In addition to fraud, Augustine contends he is entitled to summary judgment with respect to Alford's claim of civil conspiracy because she has failed to produce any evidence of the following: (1) a meeting of the minds of two or more people; (2) to accomplish some unlawful act or to accomplish a lawful purpose by unlawful means; and (3) an injury was the result of the conspiracy. *See Transport Ins. Co.,* 898 S.W.2d at 278. Similar to fraud, civil conspiracy may be established by circumstantial evidence that amounts to more than mere suspicion. *See id.*

■ After reviewing the record in its entirety, we find no evidence establishing that Augustine and Thornburg agreed to achieve a lawful purpose by unlawful means. *See Haas v. George,* 71 S.W.3d at 911. The only evidence presented by Alford to establish a meeting of the minds was the above-mentioned letter, which provides in pertinent part: "Pursuant to our conversation of today's date, my fax from [Thornburg], my conversation with [Thorn-

burg]. . . ." Alford failed to set forth any evidence, circumstantial or direct, that Augustine and Thornburg discussed the idea of defrauding Alford. While evidence of this conversation may give rise to some suspicion, that is not enough to raise a genuine issue of material fact. *Transport Ins. Co.,* 898 S.W.2d at 278. Without a showing of a meeting of the minds, there is no evidence of civil conspiracy and summary judgment was proper with respect to that claim.

### Conclusion

We affirm the trial court's order directing Alford to release the abstract of judgment and the lis pendens. We reverse Thornburg's summary judgment and remand Alford's causes of action against Thornburg to the trial court for further proceedings. We affirm Augustine's summary judgment with respect to Alford's civil conspiracy claim, but reverse it with respect to Alford's fraud claim and remand that claim to the trial court for further proceedings.