**Affirmed and Memorandum Opinion filed May 22, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-16-00113-CV

## IN THE MATTER OF THE MARRIAGE OF CARRIE HOLLOMAN SLAGLE AND ALAN PAUL SLAGLE

**On Appeal from the 300th District Court
Brazoria County, Texas
Trial Court Cause No. 76596-F**

## M E M O R A N D U M    O P I N I O N

In this divorce case, appellant Alan Paul Slagle challenges the trial court's division of the marital estate. Paul argues in his first issue that the trial court abused its discretion in dividing the community estate. In particular, Paul contends that the trial court abused its discretion when it found that Graphic Creations, Inc. was his separate property. Paul also asserts that the trial court abused its discretion because insufficient evidence supports the trial court's finding that the community estate was entitled to reimbursement. We overrule this issue because sufficient evidence

supports the trial court's division of the marital estate based on its finding that the community estate had a reimbursement claim for community funds used to benefit Graphic Creations, Paul's separate property.

In his second issue, Paul asserts that the trial court violated his due process rights. We overrule this issue because Paul failed to preserve his complaints in the trial court. We therefore affirm the trial court's judgment.

## BACKGROUND

Paul and appellee Carrie Holloman Slagle married in June 2000. Carrie filed for divorce in early 2014. The question of the property division went to trial before the bench.[1]

At the time the divorce action was filed, Carrie was working full-time earning a substantial salary.[2] Paul, on the other hand, was unemployed. By his own admission, Paul was not seeking employment[3] but was instead devoting more than sixty hours a week to "spending money" on a lawsuit involving his separate business, Graphic Creations. Paul was also involved in day-trading, spending all of his free

---

[1] There were other matters at issue during the trial that were resolved in the trial court's final judgment, including custody of the children and child support. Although Paul mentions these decisions in both his opening and reply briefs, he has not challenged those aspects of the final judgment in this appeal. *See* Tex. R. App. P. 38.1(f) ("The brief must state concisely all issues or points presented for review."); *Dallas Cnty. v. Crestview Corners Car Wash*, 370 S.W.3d 25, 57 (Tex. App.—Dallas 2012, pet. denied) ("We look to the issues and the arguments and authorities in appellant's brief to determine the grounds presented for appellate review and will consider all issues fairly raised."); *Bankhead v. Maddox*, 135 S.W.3d 162, 163–64 (Tex. App.—Tyler 2004, no pet.) (stating that "an appellate court has no discretion to fabricate an issue not raised in the appellant's brief.").

[2] The record does not reveal in what field Carrie was employed nor was there testimony regarding the exact amount of her annual salary at any time during the marriage or at the time of the divorce trial.

[3] Paul, who possessed an MBA degree in accounting and finance, began making preparations to seek employment in 2011. He admitted that, at the time of trial in October 2015, he had not yet submitted a single application for employment.

time in that activity. Paul did so with little success, losing $130,000 in his day-trading account in 2013 alone.

Much time was spent at trial discussing Graphic Creations. Paul admitted that Graphic Creations existed prior to the marriage. In 2000, the year Paul and Carrie married, Graphic Creations ran independent businesses inside two amusement parks operated by Six Flags.[4] Graphic Creations eventually grew to locations inside six parks. Graphic Creations' original arrangement with Six Flags required it to pay Six Flags approximately thirty percent of each location's earnings. According to Carrie, this arrangement had worked well for Paul, he had used it to pay his way through college, and the business was profitable.

Graphic Creations' profitability changed in 2007 when Six Flags began experiencing financial difficulties. According to Carrie, Six Flags began looking for ways to cut costs. One method they chose was to increase the fee they charged Graphic Creations to forty percent of earnings. Graphic Creations sued Six Flags over this changed arrangement.[5] According to Carrie, Paul did not earn an income after 2007. Despite the breakdown in the relationship with Six Flags, Paul maintained a separate office for Graphic Creations in Pearland. The expense of keeping this office open continued until 2013, when Paul shut down the business.

According to Carrie, Paul began spending more and more time on the lawsuit against Six Flags. Carrie testified that Paul would leave the house early in the morning and would not return until late at night, often two o'clock in the morning of the next day. Carrie also testified that during this same time period Paul began

---

[4] The record does not reveal the exact nature of the type of independent business Graphic Creations operated inside the Six Flags amusement parks.

[5] Paul testified that Six Flags filed for bankruptcy and Graphic Creations' lawsuit was on hold for several years. Paul testified that the bankruptcy court allowed Graphic Creations' suit to move forward in 2012.

taking Adderall, a medication prescribed for people with attention deficit disorder. Carrie told the trial court that Paul had not been diagnosed with attention deficit disorder, but used the drug as a stimulant.[6]

The couple loaned money to Graphic Creations throughout the marriage. Outright cash loans totaled $681,042. Carrie testified that the money for these loans came exclusively from her salary. In addition, at the end of each year, Paul would have Graphic Creations pay him a small salary, which he would then loan back to the business. The annual loans made from Paul's salary totaled $164,502.

At the conclusion of the bench trial, the trial court signed a Final Decree of Divorce. It dissolved the marriage on the grounds of insupportability. In addition to appointing Carrie sole managing conservator of the children and ordering Paul to pay monthly child support, the trial court divided the marital estate. It awarded Paul (1) all cash in his possession as well as any bank accounts in his name or where he had the sole right to make withdrawals, (2) a 2006 BMW,[7] (3) a golf cart, (4) the "separate business Graphic Creations," and (5) any recovery received in Graphic Creations' lawsuit against Six Flags. The trial court awarded Carrie (1) the house the couple had acquired during the marriage along with its contents, (2) all cash in her possession as well as any bank accounts in her name or where she had the sole right to make withdrawals, (3) retirement accounts in her name, (4) a 2008 Honda Odyssey, (5) a 2006 Lexus, and (6) a health savings account.

The trial court then turned to the marital estate's debts. It assigned the following debts to Paul: (1) American Express credit card balance totaling $28,000,

---

[6] Paul admitted that he took Adderall, denied that he took more than the prescribed dosage, and then testified that it has "been a life changer as far as cognitive energy and physical energy, which I need tremendously right now."

[7] Paul had taken a title loan on this car and he testified during the trial that the car had been repossessed.

(2) Chase Visa credit card balance totaling $14,000, (3) the $11,000 balance owed on the BMW title loan, (4) $3,006.54 owed to a health savings account that Paul had used for non-medical purposes, and (5) any debts he had incurred on or after April 2, 2014. The trial court then assigned to Carrie any debts she had incurred on or after April 2, 2014.

The trial court included the following finding in the divorce decree:

> IT IS DECREED that the community estate is entitled to reimbursement from [Paul's] separate estate for $681,042.00 and that [Carrie] is entitled to a judgment of . . . $340,521.00." IT IS THEREFORE ORDERED AND DECREED that [Carrie] is awarded as payment of the debt, the real property at . . . Pearland, Texas 77584 whose 50% equity is [$91,130]. [Carrie] is awarded the IRA whose 50% value is [$170,000]. [Carrie] is awarded the 401K whose 50% value is [$14,000]. Full value from this order is [$275,130].
>
> To offset the remaining amount of [$65,391], [Paul] is awarded the community property American Express Card debt and the community property Chase VISA Card debt.
>
> This award for reimbursement is part of the division of community property between the parties and shall not constitute or be interpreted to be any form of spousal support, alimony, or children support.

The trial court did not sign findings of fact and conclusions of law after it signed the final divorce decree.[8] This appeal followed.

## ANALYSIS

### I. The trial court did not abuse its discretion when it divided the community estate.

Paul argues in his first issue that the trial court abused its discretion when it

---

[8] Paul does not challenge on appeal the trial court's failure to make findings of fact and conclusions of law. In that situation, it is implied that the trial court made all necessary findings to support its judgment. *Mays v. Pierce*, 203 S.W.3d 564, 571 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

divided the community estate because insufficient evidence supports the trial court's "fraud on the community and reimbursement" findings. Paul also argues that the trial court's division of the community estate was arbitrary and unreasonable because it "awarded [Carrie] 100% of the community's assets and appointed [him] 100% of the community liabilities."

## A. Standard of review

We review a trial court's division of community property for an abuse of discretion. *Knight v. Knight*, 301 S.W.3d 723, 728 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981)). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *Id.* A trial court's division need not be equal and may take into consideration many factors, such as the spouses' capacities and abilities, benefits that the party not at fault would have derived from a continuation of the marriage, business opportunities, education, relative physical conditions, relative financial conditions and obligations, disparity in age, size of separate estates, the nature of the property, and disparity in income and earning capacity. *Id.*

A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *Id.* Because a trial court's discretion is not unlimited, there must be some reasonable basis for an unequal division of the property. *Id.* Under an abuse-of-discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but instead factors used in assessing whether an abuse of discretion has occurred. *Id.* In other words, Paul must not only show that there is insufficient evidence to support the trial court's findings, but also that an erroneous finding caused the trial court to abuse its discretion in the overall division of the community estate. *See*

*Wheeling v. Wheeling*, No. 08-15-00064-CV, 2017 WL 192912, at *5 (Tex. App.—Fort Worth Jan. 18, 2017, no pet.) ("Accordingly, we must also determine whether the errors of which Wife complains of on appeal, if established, caused the trial court to abuse its discretion."); *Matter of Marriage of McCoy & Els*, 488 S.W.3d 430, 433 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("We make a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) Did the trial court err in its application of discretion?" (internal quotation marks omitted)). When, as here, the trial court does not sign findings of fact, we presume the trial court made all necessary findings to support its judgment if those findings are supported by the evidence. *Matter of Marriage of McCoy & Els*, 488 S.W.3d at 433–34.

### B. The trial court did not abuse its discretion when it divided the community estate.

We turn first to Paul's assertion that the trial court abused its discretion when it based the division of the community estate, at least in part, on a finding of fraud on the community. We disagree that the trial court's division of the marital estate was based on a finding of fraud on the community. Instead, the trial court found "that the community estate is entitled to reimbursement from [Paul's] separate estate for $681,042.00." We therefore need not consider Paul's arguments addressing fraud on the community and instead focus exclusively on the trial court's findings that Graphic Creations is Paul's separate property and the related finding that the community estate was entitled to reimbursement.

Reimbursement is an equitable right that arises when the funds or assets of one marital estate are used to benefit or enhance another marital estate without receiving some benefit. *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982). Reimbursement claims are governed by section 3.402 of the Texas Family Code. A

7

reimbursement claim can arise from a variety of expenditures or contributions, including the payment by one marital estate of the unsecured liabilities of another marital estate, or as a result of inadequate compensation for the time, toil, talent, and efforts of a spouse for a business entity under the control and direction of that spouse. *See* Tex. Fam. Code Ann. § 3.402(a) (West 2014). Reimbursement is not awarded as a matter of legal right; rather, it is an equitable tool that enables the trial court to achieve a just and right division of marital assets in a given case. *Vallone*, 644 S.W.2d at 458–59; *Barras v. Barras*, 396 S.W.3d 154, 173 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures were made and that they are reimbursable. *Barras*, 396 S.W.3d at 173–74. A trial court's discretion in evaluating a claim for reimbursement is equally as broad as the discretion exercised by a trial court in making a just and right division of the community estate. *Id.* at 174.

The Texas Family Code defines separate property as property owned or claimed by a spouse before marriage, acquired during the marriage by gift, devise, or descent, or as a recovery for personal injuries sustained during the marriage. Tex. Fam. Code § 3.001; *Barnett v. Barnett,* 67 S.W.3d 107, 111 (Tex. 2001). Community property consists of the property, other than separate property, acquired by either spouse during marriage. Tex. Fam. Code § 3.002; *Barnett,* 67 S.W.3d at 111. The characterization of property as either community or separate is determined by the inception of title to the property. *Smith v. Smith*, 22 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Inception of title occurs when a party first has a claim to the property by virtue of which title is finally vested. *Id.* All property possessed by either spouse during or upon dissolution of the marriage is

8

presumed to be community property. Tex. Fam. Code § 3.003(a); *Barnett,* 67 S.W.3d at 111.

To overcome the community property presumption, a spouse claiming assets as separate property must establish their separate character by clear and convincing evidence. Tex. Fam. Code § 3.003(b); *Stavinoha v. Stavinoha,* 126 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002); *Stavinoha,* 126 S.W.3d at 607; *see also* Tex. Fam. Code § 3.003(b).

"The spouse claiming that certain property is 'separate' must trace and clearly identify the property claimed to be separate." *Zagorski v. Zagorski,* 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Id.* Any doubt as to the character of property should be resolved in favor of the community estate. *Boyd v. Boyd,* 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.).

In a legal sufficiency review of a separate property finding, we examine all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Stavinoha,* 126 S.W.3d at 608; *see also In re J.F.C.,* 96 S.W.3d at 266. Looking at the evidence in the light most favorable to the finding means we must (1) assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so; and (2) disregard all contrary evidence that a reasonable fact finder could have disbelieved or found to be

9

incredible. *Stavinoha,* 126 S.W.3d at 608; *see also In re J.F.C.,* 96 S.W.3d at 266. If we determine that no reasonable fact finder could form a firm belief or conviction of the truth of the matter to be proved, we must conclude that the evidence is legally insufficient. *Stavinoha,* 126 S.W.3d at 608; *see also In re J.F.C.,* 96 S.W.3d at 266. If we determine that the evidence is factually insufficient, we must detail in our opinion why we have concluded that a reasonable fact finder could not have credited disputed evidence in favor of the finding. *Stavinoha,* 126 S.W.3d at 609; *see also In re J.F.C.,* 96 S.W.3d at 266–67.

Appellant's sole argument that the trial court abused its discretion in finding the community estate entitled to reimbursement is that Carrie introduced no evidence Graphic Creations was his separate property. Because there was no such evidence, Paul argues, Carrie did not meet her burden to prove the community estate had a right to reimbursement.

We disagree because Paul himself testified that Graphic Creations existed before the marriage.[9] He admitted that he used Graphic Creations to pay his way

---

[9] Paul cites *Holloway v. Holloway*, 671 S.W.2d 51, 56–57 (Tex. App.—Dallas 1983, writ dism'd), in support of his argument that no evidence supports the trial court's finding that Graphic Creations is Paul's separate property. According to Paul, *Holloway* stands for the rule that "a business capitalized with mixed funds (i.e. part separate property and part community property) is characterized in proportion to the amount each estate contributed to the capitalization." If that were the rule (which we need not decide), *Holloway* would not change the analysis here because evidence introduced during trial showed that Graphic Creations was created long before Paul and Carrie married, and also that the $681,042 in community funds at issue in the trial were loaned to the company. The trial testimony regarding Graphic Creations that Paul cites in his opening and reply briefs does not show that community funds were used to capitalize Graphic Creations. Even if there were some such evidence, it would simply create a fact issue to be resolved by the trial court and, under the standard of review, we must presume the trial court resolved that fact issue in favor of its separate-property finding. Finally, Paul argues that a spouse's consent to the use of community funds to benefit a separate-property business could serve as a ratification and thereby change the status of the business from separate to community. Without passing on the correctness of this argument, we note that the trial court, as trier of fact, reasonably could have found that no ratification occurred because it believed Carrie's testimony that the community funds were loaned to Graphic Creations and were not contributions to its capital.

through college, which occurred before he was married to Carrie. Carrie also testified that Graphic Creations was Paul's separate property. Paul does not point to any evidence in the record contradicting this testimony.[10] Property is characterized as separate or community at the time of the inception of title to the property. *Barras*, 396 S.W.3d at 167, n.3. Once property is established as separate property, it remains separate property regardless of any "mutations or changes in form; its separate character is not altered by the sale, exchange, or substitution of the property." *Id.* at 167. We conclude that Carrie established that Graphic Creations was Paul's separate property by clear and convincing evidence. *See id.* at 178 (affirming reimbursement claim based on wife's testimony regarding community money used and the purpose for which money was used). The trial court did not abuse its discretion by finding accordingly. *Cf. Marriage of O'Brien*, 436 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Because [wife] failed to present any evidence at trial regarding characterization of the music instruction business, she did not overcome her burden of rebutting the community-property presumption.").

We turn next to Paul's contention that the trial court's division of the community estate was arbitrary and unreasonable because it allegedly assigned Carrie all of the community's assets and assigned him all of the community's debts. Paul's complaints are directed at the manner in which the trial court resolved the community's reimbursement claim. The trial court determined that the community

---

[10] In his reply brief, Paul contends there was testimony during trial that he negotiated a contract in 1997 to sell and then buy back Graphic Creations and that the community bought the company back in 2000. During his cross-examination of Carrie, Paul stated that he signed the sell/buy-back contract in 1997, but the contract was not admitted into evidence. Paul also told the judge, in response to a question, that the sale took place and the buy-back occurred. Paul does not reference, and our own review of the record has not revealed, any evidence—testimonial or otherwise—regarding when that buy-back occurred. Even if we assume the trial court believed Paul's testimony regarding the 1997 sale of Graphic Creations, there is no evidence supporting Paul's contention that the buy-back occurred after his marriage to Carrie in 2000.

11

estate was entitled to be reimbursed $681,042 for the community funds loaned to Graphic Creations (Paul's separate property), and thus Carrie was entitled to receive half of that amount: $340,521. The trial court offset that amount by awarding Carrie Paul's fifty-percent interest in several community assets: the house, an IRA, and a 401K account. The value of Paul's interest in those assets was $275,130. The trial court offset the remaining amount Carrie was entitled to receive—$65,391—by assigning Paul the full amounts of the American Express card and Chase Visa card debts, which totaled only $42,000. A trial court has broad discretion when resolving a reimbursement claim. *Barras*, 396 S.W.3d at 174. We cannot say that the trial court's method here was arbitrary or unreasonable. *Barras*, 396 S.W.3d at 178 (concluding trial court's resolution of reimbursement claim did not amount to an abuse of discretion).

Finally, Paul asserts, without citation to legal authority, that the trial court abused its discretion when it divided the community estate because he proved that Carrie committed fraud on the community by disposing of community funds without his knowledge or consent. In support of his argument, Paul cites to several pages of his own testimony, as well as his cross-examination of Carrie. Even if disposal of community funds without the other spouse's knowledge or consent is sufficient, standing alone, to prove fraud on the community (which we need not decide), the cited testimony does not show that Carrie engaged in such conduct. The trial court, as the trier of fact, could have disbelieved Paul's self-serving testimony that he was unaware of transactions using community funds. Similarly, the trial court could have believed Carrie when she denied that the challenged transactions had occurred at all, or that she had knowledge of them. The trial court's decision to believe Carrie rather than Paul does not establish an abuse of discretion.

We overrule appellant's first issue.

## II.  Paul did not preserve his second issue for appellate review.

Paul asserts in his second issue that the trial court violated his due process rights in a multitude of ways.  The alleged violations can be divided into three categories: (1) the trial court allowed Carrie to file amended pleadings days before the final trial, which Paul argues added new claims to the litigation; (2) Carrie failed to serve her trial exhibits and her inventory and appraisement on him prior to trial; and (3) the trial court failed to adhere to various local procedural rules as well as the Texas Rules of Civil Procedure.

Paul appeared pro se at trial, a fact he repeatedly emphasized throughout his reply brief.  Pro se litigants are held to the same standards as a licensed attorney, and they must comply with all applicable laws and rules of procedure.  *Canton-Carter v. Baylor Coll. Of Med.*, 271 S.W.3d 928, 930 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  As a prerequisite to presenting a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion."  Tex. R. App. P. 33.1(a)(1); *Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 317 (Tex. 2012).  This rule also applies to constitutional complaints, including due process violations.  *See In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (observing that Supreme Court of the United States and Supreme Court of Texas have both held that even constitutional claims must be raised in trial court to preserve error); *Alford v. Thornburg*, 113 S.W.3d 575, 581 (Tex. App.—Texarkana 2003, no pet.) ("Even constitutional errors, such as due process complaints, are waived if not raised first in the trial court.").

Paul did not file a written motion for continuance.[11]  Nor did he object to any

---

[11] Paul contends throughout his reply brief that he asked the trial court for a continuance, and he cites several locations in the reporter's record in support of his argument.  We have reviewed Paul's record citations and they refer to discussions between Paul and the trial court regarding Paul's unsuccessful attempt to add a motion for temporary orders to the trial court's

action or perceived inaction by the trial court on due process grounds at any point during the final divorce trial. In fact, Paul informed the trial court that he was ready for trial. We hold Paul did not preserve this issue for appellate review because he did not raise his complaints with the trial court. *See Karaali v. Petroleum Wholesale, L.P.*, No. 14-11-00577-CV, 2013 WL 6198349, at \*5 (Tex. App.—Houston [14th Dist.] Nov. 26, 2013, no pet.) (mem. op.) (holding appellant failed to preserve litany of alleged errors because he did not raise them in trial court). We overrule Paul's second issue.

## CONCLUSION

Having overruled both issues Paul raised in this appeal, we affirm the trial court's judgment.

/s/ J. Brett Busby
Justice

Panel consists of Justices Jamison, Busby, and Donovan.

---

docket on the same day as the previously set final trial. Paul does not challenge the trial court's handling of this issue on appeal.