Maureen Louise STAVINOHA,
Appellant,

v.

Paul Anthony STAVINOHA, Appellee.

No. 14-02-01081-CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 20, 2004.

Lynn S. Kuriger, Houston, for appellant.

Kent W. Shriver, The Woodlands, Shawn Russel Casey, Houston, for appellee.

Panel consists of Justices FOWLER and EDELMAN. Former Chief Justice SCOTT BRISTER not participating.

## OPINION

WANDA McKEE FOWLER, Justice.

In this case we are asked to decide the proper characterization of retirement benefits of a police officer who participated in the Houston Police Officer's Pension System Deferred Retirement Option Plan. Based on the facts of this case, we hold that all of the officer's benefits were fully vested and, to the extent they were earned during marriage, were community property.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee Paul Anthony Stavinoha began working for the City of Houston as a police officer on January 20, 1975. He became a member of the Houston Police Officers Pension System ("HPOPS") on May 10, 1975. Four years after this, Paul and appellant, Maureen Louise Stavinoha, were married on June 9, 1979.

Paul became eligible to retire on May 10, 1995, but instead of retiring immediately, in November of 1995 he elected to participate in the HPOPS Deferred Retirement Option Plan ("DROP"). DROP is an optional method to receive benefits available to HPOPS members with 20 or more years of credited pension service with the City of Houston. Under DROP, the member continues working and receiving a salary, and the monthly retirement annuity the member could have received upon retirement is credited to a notional DROP account in the member's name. When the member retires—stops the DROP program—he or she is entitled to receive the amount accumulated in the DROP account in a lump sum, and is also entitled to receive payment of the monthly pension benefit.

In the summer of 2000, approximately four and one-half years after Paul began participating in the DROP, the parties petitioned for divorce. Issues concerning conservatorship, possession and access, and child support for their two minor children were resolved through mediation. Property issues—in large part dominated by whether Paul's retirement benefits paid into the DROP account were community or separate property—were tried in a nine-day bench trial. The final decree of divorce was entered on June 21, 2002.

The decree provided that (1) the monthly benefit credited to the DROP account from 1995 until the date of divorce (June

21, 2002), was apportioned between the community and separate estates; (2) the monthly benefit credited into the DROP account after June 21, 2002, but prior to Paul's actual separation from service, was characterized as 100% Paul's separate property; and (3) the monthly benefit paid after Paul's actual separation from service was apportioned between the community and separate estates. Maureen was awarded 50% of the apportioned retirement benefits. The decree further provided that the community had no interest in annual cost-of-living adjustments (COLAs) and other benefits paid post-divorce.

At Maureen's request—and after Maureen filed a notice of past due findings and conclusions—the trial court issued findings of fact and conclusions of law. This appeal followed.

## II. CONTROLLING STATUTORY AND CASE–LAW RULES

On appeal, Maureen raises three issues in which she attacks specific findings of fact and conclusions of law. She complains that the trial court wrongly characterized community property as separate and that this mischaracterization caused a disproportionate division of her marital estate that was manifestly unfair and unjust. This claim requires us to apply a number of rules and some statutes.

### A. DEFINITIONS AND RULES RELATED TO PROPERTY

Several special rules and standards govern our review of this judgment. We begin with the definitions and rules related to property. Separate property is defined in the Texas Constitution as "[a]ll property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent." TEX. CONST. art. XVI, § 15. The Texas Family Code defines separate property as that property owned by a spouse before marriage, acquired during the marriage by gift, devise, or descent, or as a recovery for personal injuries sustained during the marriage. See TEX. FAM.CODE § 3.001.

Community property consists of the property, other than separate property, acquired by either spouse during marriage. See TEX. FAM.CODE § 3.002; Barnett v. Barnett, 67 S.W.3d 107, 111 (Tex. 2001). All property possessed by either spouse during or on dissolution of marriage is presumed to be community property. TEX. FAM.CODE § 3.003(a); Barnett, 67 S.W.3d at 111.

■ To overcome the community property presumption, a spouse claiming assets as separate property is required to establish their separate character, not merely by a preponderance of the evidence, but by clear and convincing evidence. TEX. FAM. CODE § 3.003(b); McElwee v. McElwee, 911 S.W.2d 182, 188 (Tex.App.-Houston [1st Dist.] 1995, writ denied). "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. In re J.F.C., 96 S.W.3d 256, 264 (Tex.2002); Slaton v. Slaton, 987 S.W.2d 180, 182 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); see also TEX. FAM.CODE § 101.007.

### B. STANDARD OF REVIEW WHEN AN ESTATE HAS BEEN DIVIDED

■ In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM.CODE § 7.001. To disturb a trial court's division of property, Maureen must show the trial court clearly abused its discretion by a division or an order that is manifestly unjust and unfair.

See *Evans v. Evans*, 14 S.W.3d 343, 345–46 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Under this abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but are merely relevant factors in assessing whether the trial court abused its discretion. *Zieba v. Martin*, 928 S.W.2d 782, 790 (Tex.App.-Houston [14th Dist.] 1996, no writ). We must remand the entire community estate for a new division when we find reversible error that materially affects the trial court's "just and right" division of the property. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex.1985).

We review the trial court's conclusions of law de novo. *Smith v. Smith*, 22 S.W.3d 140, 143–44 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Conclusions of law may not be challenged for factual insufficiency. *Zieba*, 928 S.W.2d at 786 n. 3. The standard of review is whether the conclusions of law drawn from the facts are correct. *Zieben v. Platt*, 786 S.W.2d 797, 802 (Tex.App.-Houston [14th Dist.] 1990, no writ). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex.App.-Houston [14th Dist.] 1996, no writ). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

### C. Heightened Review of Separate Property Claims

Paul concedes he had the burden of proof to demonstrate by clear and convincing evidence that the disputed benefits are his separate property. Recently, the Texas Supreme Court, in a parental termination case, clarified our standard of review when a party challenges findings that must be supported by clear and convincing evidence. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002) (discussing factual sufficiency review); *In re J.F.C.*, 96 S.W.3d 256, 264–68 (Tex.2002) (discussing legal sufficiency review). In these cases, the Court reasoned that the traditional legal and factual sufficiency reviews were inadequate to accommodate the clear and convincing burden of proof in termination proceedings, concluding that "the burden of proof at trial necessarily affects appellate review of the evidence." *J.F.C.*, 96 S.W.3d at 264 (quoting *C.H.*, 89 S.W.3d at 25). In light of these comments in *C.H.* and *J.F.C.*, that the burden of proof at trial necessarily affects appellate review of the evidence, we will apply the standard of review the Court articulated in these cases.

### 1. Legal Sufficiency Review with Heightened Standard

*J.F.C.* held that when we conduct a legal sufficiency review of a separate property finding, we are instructed to look at all the evidence in the light most favorable to the finding to determine whether *a reasonable trier of fact could have formed a firm belief or conviction that its finding was true*. *See J.F.C.*, 96 S.W.3d at 266. Looking at the evidence in the light most favorable to the finding means that we must (1) assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and (2) disregard all contrary evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *See id.* However, we are not required to disregard undisputed facts that do not support the finding, because that might skew a clear and convincing analysis. *See id.* If we determine that no reasonable fact finder could form a firm belief or conviction of the truth of the matter to be proved, we must conclude that the evidence is legally insufficient. *See id.*

## 2. Factual Sufficiency Review with Heightened Standard

■ Likewise, under *C.H.*, a new factual sufficiency review applies. We must consider whether all of the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the allegations sought to be established. *See C.H.*, 89 S.W.3d at 25; *J.F.C.*, 96 S.W.3d at 266. We should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *See J.F.C.*, 96 S.W.3d at 266 (citing *C.H.*, 89 S.W.3d at 25). If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *See id.* If we determine the evidence is factually insufficient, we are to detail in our opinion why we have concluded that a reasonable fact finder could not have credited disputed evidence in favor of the finding. *See id.* at 266–67.

## III. MAUREEN'S ISSUES

■ In this matter of first impression in Texas, we are asked to determine whether, when a member of the HPOPS divorces after electing to enter its DROP program, the retirement benefits that are deferred because of DROP participation are (1) the member's separate property or (2) community property subject to a just and right division at divorce.

In her first and second issues, Maureen argues that the trial court abused its discretion because the evidence was legally and factually insufficient to support the court's characterization of the DROP benefits as separate property. Specifically, Maureen contends the following deferred retirement benefits were community property, not Paul's separate property:

1. the monthly retirement pension credited to the DROP account post-divorce;

2. the annual cost-of-living adjustments (COLAs);

3. the 13th annual payment benefit;[1]

4. the monthly benefit for defraying health insurance costs;[2] and

5. the one-time $5,000 lump sum payment.[3]

Collectively, we refer to these benefits as the "disputed benefits."[4] Maureen also challenges the following conclusions of law:

10. [Paul] is entitled to the confirmation as his separate property that property which he owned prior to his marriage and those pension benefits anticipated to accrue in the future through his employment but for which [Paul] has not yet received right, title or interest.

---

1. The retirement plan makes available a "13th annual payment" in an amount equal to "the last monthly payment received by the retiree or survivor before issuance of the payment," when the plan meets certain financial criteria. *See* Tex.Rev.Civ. Stat. art. 6243g–4, § 12(e).

2. The retirement plan includes a provision for a monthly payment of a specified amount that is intended to defray the retired member's group medical insurance costs. *See* Tex.Rev. Civ. Stat. art. 6243g–4, § 12(d).

3. The retirement benefits include a "one-time lump-sum payment of $5,000 at the same time the first monthly pension payment is made" for eligible members. *See* Tex.Rev.Civ. Stat. art. 6243g–4, § 12(b).

4. Maureen makes no claim that the community has any interest in the contribution deducted from Paul's salary that is placed into the DROP account post-divorce.

11. The division of the property of [Paul] and [Maureen] as reflected in the Final Decree of Divorce signed in this cause on June 21, 2002 is just and right, having due regard for the rights of each party and the children of the marriage, irrespective of the characterization of any item of property as either community or separate.

Maureen argues that the trial court erred in distinguishing the benefits received before the divorce from those deferred until after the divorce because Paul chose to participate in DROP. She claims (1) the disputed benefits were vested and fixed as of the date he "retired" for purposes of entry into the DROP in 1995 (prior to the divorce), and (2) Paul's continuing employment and any possible increases in pay or promotions can have no effect on the amount of his pension benefits.[5] As we explain below, having reviewed the evidence presented at trial and the applicable statutory provisions, we agree.

## IV. ANALYSIS

### A. WHETHER RETIREMENT BENEFITS ARE COMMUNITY OR SEPARATE GENERALLY DEPENDS ON WHEN THEY WERE EARNED

Retirement benefits *earned* by the employee spouse *during marriage* are community property—subject to division upon divorce—even though they are not immediately subject to possession and enjoyment at the time of divorce. *See Cearley v. Cearley*, 544 S.W.2d 661, 662 (Tex.1976); *Herring v. Blakeley*, 385 S.W.2d 843, 846 (Tex.1965); *Hudson v. Hudson*, 763 S.W.2d 603, 605 (Tex.App.-Houston [14th Dist.] 1989, no writ). However, post-divorce *increases* in an individual's retirement benefits that are *attributable to the person's continued employment*, such as raises, promotions, services rendered, or contributions, are *not* subject to *community property division. See Berry v. Berry*, 647 S.W.2d 945, 947 (Tex.1983); *Boyd v. Boyd*, 67 S.W.3d 398, 408 (Tex.App.-Fort Worth 2002, no pet.). Conversely, *post-divorce* increases in an employee spouse's retirement benefits that are *not attributable to continued employment* are subject to community property division. *See Burchfield v. Finch*, 968 S.W.2d 422, 424–25 (Tex.App.-Texarkana 1998, pet denied); *Phillips v. Parrish*, 814 S.W.2d 501, 505 (Tex.App.-Houston [1st Dist.] 1991, writ denied). With this framework in mind of how the law views retirement benefits, we turn to the pension plan at issue here.

### B. ALL OF THE DISPUTED BENEFITS WERE EARNED DURING MARRIAGE; NONE WERE EARNED POST-DIVORCE

Maureen contends that the trial court should have recognized the community's apportionable interest in all of the retirement benefits, including those that are credited to DROP or received post-divorce. In support of her position, she emphasizes the following facts: (1) Paul was fully vested in the plan in 1995 after he completed twenty years of service, (2) Paul's monthly pension benefit was fixed and frozen in 1995, and additional service, raises, or promotions cannot change the basic benefit, (3) since 1995, Paul has been a "retiree" and his monthly pension benefit has been, and will continue to be, credited into a DROP account until he actually separates from service; and (4) Paul does not need to continue working to receive benefits. We agree.

HPOPS's pension plan is a defined benefit plan governed by article 6243g–4 of the

---

5. Maureen has a third issue that we do not reach because of our resolution of the first two issues.

Texas Revised Civil Statutes. *See* Tex. Rev.Civ. Stat. art. 6243g–4, §§ 1–28. The basic retirement benefits administered through the pension system are set out in section 12 of article 6243g–4. The benefits are paid to every eligible member who separates from service[6] after earning twenty or more years of service. *Id.* § 12(a). Patrick Franey, HPOPS's Director of Administration, testified that the basic retirement benefit is a service-related benefit, which is based on years of service with a twenty-year vesting period; the member's interest in all of the above benefits is vested upon attaining twenty years of service.

The statutory provisions specific to DROP are located in section 14 of article 6243g–4. This section provides that an active member who has at least twenty years of service with the police department may elect to participate in DROP and receive a DROP benefit instead of the standard pension. *Id.* § 14(b).[7] The election may be made "by an active member who has attained the required years of service." *Id.* Thus, in order to participate in the DROP, a member must be eligible for retirement.

The statutory scheme expressly provides that, when a member of the HPOPS chooses to enter the DROP, all retirement benefits are set as if the member had actually retired and begun receiving his pension on the date the member elected to enter the DROP. A member who participates in the DROP cannot accrue additional service credit—even though he continues to work—and any increases in pay that occur after entry into the DROP cannot be used in computing the monthly pension benefit. *See id.* § 14(c). The HPOPS information booklet confirms this. It explains that when a member decides to enter the DROP program, the member's pension benefits are frozen at the time of the election, regardless of how long the member may continue to be employed and regardless of any future increases in pay.[8] Franey also confirmed this. He testified that Paul's interest in the pension benefits was vested on May 10, 1995, and Paul could have elected to begin receiving his retirement benefits immediately. Franey also confirmed that, once the DROP election is made, neither pay raises nor additional years of service can be used to increase the monthly pension amount credited to

6. "Separation from service" is defined as "cessation of work for the police department of a city subject to this article, whether caused by death, discharge, resignation, or transfer to an unclassified position." Tex.Rev. Civ. Stat. art. 6243g–4, § 2(20).

7. The "DROP benefit" is defined as "the total amount credited to a member's notional DROP account, payable as described by this section, plus a monthly retirement pension." *See id.* § 14(a).

8. The HPOPS booklet explains how DROP works as follows:

The DROP decision enables the member to receive a 'reduced' annuity and a lump sum distribution at the time the member terminates employment as a classified police officer with the City of Houston Police Depart-

ment. A 'reduced annuity' means that the member's pension benefit is frozen at the time DROP is elected ... The member's monthly benefit is frozen as of his/her DROP entrance date, regardless of how long he/she continues to be employed as a classified police officer of the City of Houston Police Department. *Following the DROP election, the member does not accrue additional service credit. Increases in pay that occur on or after the effective date of the DROP election may not be used in computing the member's monthly service pension. However, a member's monthly DROP benefit does receive cost of living adjustments that occur on or after the DROP date that would be applicable to pension payments.*
(emphasis in original).

Paul's DROP account; it can be increased only by the annual COLAs.

In short, since his election to participate in the DROP, nothing that Paul has done or has failed to do—either pre-divorce or post-divorce—can affect the basic retirement benefits which were vested on May 10, 1995, and frozen on November 18, 1995. While Paul continues to work for the police department, the DROP election only means that Paul has deferred receipt of retirement benefits which he earned by virtue of his work from May 10, 1975 through November 18, 1995. The fact that Paul is currently deferring receipt of retirement benefits while they are credited into his DROP account does not alter the community property character of the retirement benefits, most of which were earned by virtue of work during the existence of the community, vested during the existence of the community, and were frozen in value when Paul "retired" in November 1995, prior to the divorce.

Therefore, we hold that Maureen is entitled to a percentage of the community interest in all of the disputed benefits credited to Paul's DROP account, including those credited post-divorce.[9] However, increases in the DROP account from Paul's contributions from his salary post-divorce remain his separate property.

We likewise hold that the annual COLAs, as part of the basic retirement benefits provided for in section 12 of article 6243g–4, were community property. *See* Tex.Rev.Civ. Stat. art. 6243g–4, § 12(c). Courts, including this court, have held that increases resulting from COLAs are subject to community property division because they are not attributable to raises, promotions, services rendered, or contributions. *See, e.g, Burchfield v. Finch*, 968 S.W.2d at 424–25; *Phillips v. Parrish*, 814 S.W.2d at 504–05; *see also Sutherland v. Cobern*, 843 S.W.2d 127, 131 (Tex.App.-Texarkana 1992, writ denied) (holding that COLAs are a means of offsetting otherwise declining value of retirement benefits during marriage and are, thus, community property subject to division); *Taylor v. Taylor*, No. 14–98–01284–CV, 2000 WL 1125540 (Tex.App.-Houston [14th Dist.]

9. Although this issue appears to be one of first impression in Texas, our conclusion is shared by at least one other state court. In *Bailey v. Bailey*, 708 So.2d 354 (La.1998), the Louisiana Supreme Court held that the trial court erred in characterizing post-divorce DROP credits in the Louisiana State Employee's Retirement System (LASERS) as the husband's separate property. *See id.* at 358–59. There, as here, the husband was married when he entered the DROP program, and continued to be married during part, but not all, of his participation in the program. In reaching its conclusion that all of the funds credited into the husband's DROP account were apportionable between the community and separate estates, the court reasoned:

> If Mr. Bailey had actually retired on the date he entered the DROP program, Mrs. Bailey clearly would have had the right to share, in the stipulated percentage, in the retirement benefits he would have received. The fact that the same amount of monthly retirement benefits was credited to a deferred-receipt account under a fictitious retirement for a specific temporary period should not change that result.
>
> . . .
>
> But just as Mrs. Bailey is entitled to her *Sims* [*v. Sims*, 358 So.2d 919 (La.1978)] formula percentage of Mr. Bailey's base benefits he will receive upon retirement, she also is entitled to the same percentage of his DROP account, inasmuch as both the base retirement benefits and the funds in the DROP account are attributable to Mr. Bailey's employment and retirement contributions prior to the termination of the community.

*Id.* at 358. Although some aspects of the LASERS DROP program differ from the HPOPS DROP program, most notably that a member may not participate in DROP for more than three years, *see id.* at 356, the similarities of the plans render the *Bailey* court's reasoning persuasive.

August 10, 2000, pet. denied) (not designated for publication) (same).

The same reasoning applies to the 13th annual payment benefit, the monthly benefit for defraying health insurance costs, and the one-time $5,000 lump sum payment. As noted above, all of these benefits are provided for in section 12 of article 6243g–4, and all of them are available to a member who retires after earning twenty or more years of service. *See* Tex.Rev.Civ. Stat. art. 6243g–4, §§ 12(b)–(e). To be eligible to receive them, the DROP member is not required to do anything more than work for twenty years. The community character of these benefits is not altered merely because they may be deferred to a DROP account or received post-divorce. Indeed, Paul concedes that the $5,000 lump-sum payment is subject to division as a community asset; we see no reason to distinguish this benefit from the others Maureen contends are community assets to the extent they were earned during marriage.[10]

We hold that the trial court abused its discretion in ruling and making findings of fact that the disputed benefits are Paul's separate property. We also hold that the portion of the trial court's conclusion of law number 10, which states that "Husband is entitled to the confirmation as his separate property . . . those pension benefits anticipated to accrue in the future through his employment but for which Husband has not yet received right, title,

or interest" is incorrect insofar as it refers to the disputed benefits.

### C. Paul's Arguments Do Not Change the Outcome

Paul argues that the characterization of these benefits is governed by the inception of title doctrine; it states that inception of title occurs "when a party first has a right of claim to the property by virtue of which title is finally vested." *See Wierzchula v. Wierzchula,* 623 S.W.2d 730, 731–32 (Tex. Civ.App.-Houston [1st Dist.] 1981, no writ). He contends that he has overcome the community property presumption with clear and convincing evidence of tracing that the disputed benefits are the result of toil and funds expended at a time when Paul was no longer married to Maureen. *See Tarver v. Tarver,* 394 S.W.2d 780, 783 (Tex.1965) (stating general rule that to discharge the burden imposed by the statute, a spouse must trace and clearly identify property claimed as separate property); *McKinley v. McKinley,* 496 S.W.2d 540, 543 (Tex.1973) (same).

Paul points to the following in support of his position: (1) he is required to contribute monthly to the DROP account to qualify for DROP participation; (2) by enrolling in DROP, he bargained away the valuable consideration of his right to increase his pension benefits based on his continued post-divorce service; (3) his post-divorce benefits are contributed dollar-for-dollar to the notional account; (4) upon retirement,

---

**10.** At oral argument, Paul explained that he conceded that the $5,000 lump-sum payment is not entirely his separate property because the only requirement to receive it is that the member have worked at least twenty years. However, this seems to be a distinction without a difference, because that appears to be the only requirement to be eligible to participate in the DROP as well. *See* Tex.Rev.Civ. Stat. art. 6243g–4, § 14(b) ("An active member who has at least 20 years of service with the police department may file with the pen-

sion system an irrevocable election to participate in DROP and receive a DROP benefit instead of the standard form of pension provided by this article."). Nor do we think it is significant that section 14 does not mention the payment, because the statutory scheme specifically provides that the payment is made upon separation from service and at the same time the first monthly pension payment is made; thus, it is unnecessary to "park" the payment in a DROP account. *See id.* § 12(b).

HPOPS will only distribute to him that amount of post-divorce DROP benefits he actually made post-divorce; and (5) all the DROP contributions the trial court found were separate property are contributed post-divorce. Paul does not explain the significance of these factors, but merely asserts that they demonstrate that the portion of the DROP account that accumulates post-divorce is a benefit Paul earned when he was no longer married to Maureen. Therefore, Paul contends, that portion of the DROP account is his separate property. Additionally, Paul asserts that the testimony of Patrick Franey, HPOPS's Director of Administration, establishes that to treat the disputed DROP credits as community property would be to grant Maureen benefits not contemplated under the HPOPS pension plan, because plan administrators have never allowed these benefits to be divided by a qualified domestic relations order.

We do not find these arguments persuasive. First, Paul's argument that he must contribute monthly to the DROP account to qualify for DROP participation is misleading. The pension plan merely requires that active members of the pension system must pay into the system a portion of their direct pay. See TEX.REV.CIV. STAT. art. 6243g–4, § 8(a). Paul has chosen to continue to work and receive a salary; therefore, he is required to pay into the pension system. There is no statutory *requirement that he pay to participate in* the DROP. Moreover, Maureen does not contend that any part of his post-divorce contribution from salary is community property.

As for Paul's argument that by enrolling in the DROP he bargained away the valuable consideration of his right to increase his pension benefits based on his continued post-divorce service, we do not see how this impacts the only relevant inquiry, which is whether the benefits were earned during the marriage. Moreover, although the parties did not develop evidence of the benefits of DROP participation, it appears that, by choosing to enter the DROP rather than simply retire and begin receiving pension payments, any "valuable consideration" Paul lost would be offset by the benefits of accumulating credits in the DROP account toward a lump sum payment of retirement benefits that earn interest and receive annual cost-of-living adjustments while he continues to work and receive a salary.

Paul's remaining arguments are based on the tautology that the post-divorce DROP credits are his separate property because they are made post-divorce. But, again, the mere fact that the DROP credits are *made* post-divorce does not mean they are benefits that are *earned* post-divorce. Paul points to no evidence that the DROP credits and the other benefits at issue were earned by him as a result of his continued employment, such as by raises, promotions, services rendered, or contributions. The assertion that Paul "must" work to participate in DROP is unpersuasive and unsupported by the evidence. As we noted above, Paul chose to enter the DROP and continue working instead of retiring and receiving retirement benefits immediately, and by participating in the DROP, he receives the benefits of that participation. Even Paul's witness, Patrick Franey, who administers the DROP, testified that there is no statutory provision that requires the member who has made a DROP election to continue working after the election, and it is simply a matter of choice on the part of the member.

Thus, whether we apply the law specifically applicable to retirement benefits or Paul's inception of title theory, the outcome remains the same. When Paul chose

to participate in the DROP, the amounts credited to his DROP account (or deferred until actual retirement) represented vested retirement benefits-not Paul's earnings after the termination of the community. Paul has failed to demonstrate, by clear and convincing evidence, that the disputed benefits are his separate property.

Paul advances one final argument that the disputed benefits are separate property. It is based on Franey's testimony that the HPOPS administrators do not recognize the post-divorce DROP credits and the other disputed benefits as community property, and have never allowed these benefits to be divided by a qualified domestic relations order. Paul argues that the board of directors of HPOPS is entitled to refuse to recognize the benefits as community property subject to division because they are authorized by statute to "establish the policies and procedures for disbursements from the fund it considers appropriate," see Tex.Rev.Civ. Stat. art. 6243g-4, § 6(b). Paul further suggests that Maureen's "real complaint" may not lie with the trial court but with HPOPS, which is not a party to the suit. We disagree.

The short answer to this claim is that our state constitution and our state legislature—not the HPOPS administrators—define what is community property. And the courts—not the HPOPS administrators-are the ultimate interpreters of these definitions. Under the Texas Family Code, state retirement plans are subject to division upon divorce. See Tex. Fam.Code

§ 7.003. All of the benefits Maureen seeks are part of the defined benefit plan administered by HPOPS, and section 28(e) of article 6243g-4 provides that accrued benefits may be divided by a qualified domestic relations order and paid to an alternate payee in accordance with that order. See id. § 28(e). Furthermore, we have found that almost all of the benefits were earned pre-divorce and are, therefore, community property. At this point, it does not matter how the HPOPS administrators view these benefits; their interpretation is not binding on this Court.[11]

### D. THE TAGGART APPORTIONMENT FORMULA APPLIES

■ Having determined that the disputed benefits, to the extent they were earned during the marriage, are community assets subject to division upon divorce, we next turn to the proper apportionment of the assets. Maureen argues that the apportionment formula of *Taggart v. Taggart* applies to determine the extent of the community interest in the disputed retirement benefits. See 552 S.W.2d 422, 423–24 (Tex.1977). Paul worked for the police department for 4.39 years before marriage and had worked almost 21 years when he elected to effectively "retire" by entering the DROP program. The trial court accepted Maureen's expert's calculation that the community's interest in the pension benefits was 80.11%, while Paul's separate property interest was 19.89%. Paul did not challenge this calculation below or on appeal. Therefore, we will not disturb this part of the trial court's ruling awarding

11. Although neither party addresses this in their briefs, it appears from our review of the record that the HPOPS administrators reject the disputed benefits on the basis of Government Code section 804.003(g)(7), which provides that a public retirement system may reject a domestic relations order as a qualified domestic relations order unless the order "does not purport to award any future benefit increases that are provided or required by the legislature." See Tex. Gov't Code § 803.003(g)(7). They apparently take the position that the disputed benefits are "future benefit increases," and, therefore, they have the discretion to refuse to qualify an order dividing them. We do not address this position.

Maureen 50% of the community's interest. However, we must discuss Maureen's contention that the disputed benefits should be divided using the Texas Supreme Court's *Taggart* apportionment formula.

In *Taggart,* an ex-wife sued for a portion of her ex-husband's retirement benefits after he retired. The ex-husband had 360 months of active and retired naval service, with 246 months of those months earned during marriage. The Texas Supreme Court held that the ex-wife owned as her part of the community estate a share in the contingent right to the ex-husband's military retirement benefits even though that right had not matured at the time of the divorce. *Taggart,* 552 S.W.2d at 423. The *Taggart* court then awarded the ex-wife one-half of 246/360 of the ex-husband's total retirement pay. *Id.* at 424.

Later, in *Berry v. Berry,* the Supreme Court reaffirmed the *Taggart* apportionment formula for determining the extent of the community interest in retirement benefits, but instructed that when the value of such benefits is in issue, the benefits are to be apportioned to the spouses based upon the value of the community's interest at the time of divorce, not at the time of retirement. *See Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.1983). In *Berry,* the husband did not retire until after the divorce, and the record showed that, after the divorce, the husband's retirement benefits increased as a result of twelve to fourteen pay raises and an improved benefit plan. The *Berry* court determined that to allow the wife to share in these post-divorce increases would impermissibly invade the husband's separate property. *Id.*

Since *Berry,* Texas courts have continued to apply the *Taggart* formula to determine the extent of the community's interest when the employee spouse's retirement is fully matured at the time of divorce. *See Limbaugh v. Limbaugh,* 71 S.W.3d 1, 16 (Tex.App.-Waco 2002, no pet); *Hudson v. Hudson,* 763 S.W.2d at 605; *see also Harrell v. Harrell,* 700 S.W.2d 645, 646, 648 (Tex.App.-Corpus Christi 1986, no writ) (applying *Taggart* formula to determine extent of community interest in retirement benefits); *Workings v. Workings,* 700 S.W.2d 251, 254 (Tex.App.-Dallas 1985, no writ) (same). We are therefore persuaded that cases involving the extent, as opposed to the value, of the community interest in retirement funds require application of the *Taggart* formula.

Here, Paul and Maureen were still married when Paul elected to participate in the DROP. If Paul had instead chosen to retire at that time, there would be no question that the *Taggart* formula would be applicable, because there could be no post-divorce labors that could increase the value of the retirement benefits. Because all of the benefits were vested at the time Paul entered the DROP, and because he is considered "retired" for purposes of determining his benefits under the DROP, Paul is likewise effectively retired for purposes of characterizing the retirement benefits. There is no danger that any post-divorce labors will increase the retirement benefits to implicate the application of the *Berry* valuation formula. We therefore hold that this situation is more analogous to *Taggart* than *Berry,* and thus the *Taggart* apportionment formula is applicable. *See Shanks v. Treadway,* 110 S.W.3d 444, 446 n. 3 (Tex.2003) (recognizing that serious concerns have been raised regarding the *Berry* formula's failure to account for post-divorce increases in the value of retirement benefits attributable to community property contributions to the plan).[12.]

---

**12.** We further note that, although Maureen is entitled to her percentage of the community interest in the DROP, she is not entitled to actually receive the payments until Paul re-

### E. This was Not a Just and Right Property Division

 Having determined that the evidence was legally and factually insufficient to support the trial court's characterization of the disputed DROP benefits as separate property and the proper method of apportionment, we must now consider whether the trial court's mischaracterization caused it to abuse its discretion in making its property division.

As noted above, we must remand the entire community estate for a new division when we find reversible error that materially affects the trial court's "just and right" division of the property. See Jacobs, 687 S.W.2d at 732. If, on the other hand, the mischaracterization of the property had only a de minimis effect on the trial court's just and right division, then the trial court did not abuse its discretion. See Robles v. Robles, 965 S.W.2d 605, 621 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). When the court mistakenly characterizes property that constitutes the main asset of the parties, the error is of such a magnitude that it materially affects the just and right division of the community estate. See In re Marriage of Taylor, 992 S.W.2d 616, 621 (Tex.App.-Texarkana 1999, no pet.).

We conclude that the trial court's error in mischaracterizing the five disputed benefits as Paul's separate property had more than a de minimis effect on the trial court's just and right division. The net value of the community interest as determined by the trial court—without the mischaracterized benefits—was $478,631. The exact value of the post-divorce DROP credits, the largest of the mischaracterized benefits, is necessarily indeterminate because it depends on the length of time Paul chooses to continue participating in the DROP program, as well as other factors such as the accumulation of interest and annual COLAs. However, Maureen's expert testified that Paul's separate property interest in the DROP, pre-divorce, was approximately $28,000 out of a total value of over $259,000. Maureen also points out that, based on the current monthly pension benefit credit (without computing increases due to annual COLAs and interest earned on the balance), the community is deprived of no less than $20,927 for every year that Paul continues to defer his actual retirement.[13] There was also testimony from Maureen's expert that the present value of this asset was $442,303. In addition to the community's loss of the post-divorce monthly credits to the DROP account, COLAs, and earned interest, there was evidence that the community's 80.11% interest in the medical stipend, the 13th annual payment, and the $5,000 one-time lump sum payment was valued at $36,321.

Thus, Maureen has been deprived of any portion of the 80.11% community interest in these benefits, and the degree of harm increases for every year that Paul continues to defer his retirement and the monthly benefits are credited into his DROP account. Therefore, the loss to the community of an 80.11% community interest in the five mischaracterized benefits materially affects the equitable division made by the trial court and warrants remand to the trial court for a new division. To find otherwise would result in a division of

---

tires or otherwise separates from service. At that time, the balance of the DROP account (less Paul's separate contributions from his salary post-divorce and any earnings thereon) can be divided and distributed in accordance with HPOPS' procedures.

13. This amount is determined by multiplying the current monthly pension amount of $2,177 by twelve for a total of $26,124 per year, and then multiplying $26,124 by the community's 80.11% interest for a total of $20,927.

property that is neither just nor right. The trial court's conclusion of law that the property division is just and right irrespective of the characterization of any item of property as community or separate is erroneous as a matter of law.

We therefore sustain Maureen's first and second issues. Because of our resolution of theses issues, it is unnecessary for us to reach Maureen's third issue, that the trial court erred in failing to make findings of fact and conclusions of law regarding the values of the disputed retirement benefits.

## CONCLUSION

In summary, we find that the trial court abused its discretion in finding that the post-divorce DROP credits and the other disputed benefits were Paul's separate property. All of these benefits, to the extent they were earned during the marriage, were community property and subject to division. However, increases in the DROP account from Paul's contributions from his current salary remain his separate property, which Maureen does not challenge. Finally, designating these retirement benefits as separate, rather than community, materially affected the property division, making it manifestly unfair and unjust.

For these reasons, the trial court's judgment is reversed and remanded for further proceedings in accordance with this opinion.