Affirmed and Memorandum Opinion filed June 30, 2009








Affirmed and Memorandum Opinion filed June 30, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00083-CV

____________

 

JIMMY ZAMARRIPA, Appellant

 

V.

 

SYLVIA C. ZAMARRIPA, Appellee

 



 

On Appeal from the 387th
District Court

Fort Bend County, Texas

Trial Court Cause No. 05-CV-141,078

 



 

M E M O R A N D U M   O P I N I O N

Appellant Jimmy Zamarripa appeals from a final divorce
decree following a bench trial.  Jimmy contends that the trial court erred by
characterizing all of his pension benefits as community property.  We affirm.

Background








Jimmy and appellee Sylvia Zamarripa were married on June 3,
1984.  Jimmy began receiving funds from a pension plan administered by Central
Pension on June 1, 2003.  Jimmy filed a petition seeking divorce on February 9,
2005.  Neither Jimmy=s original petition nor his amended
petition filed on February 28, 2005 identifies any portion of his pension
benefits as his separate property.

Sylvia submitted interrogatories, requests for disclosure,
and requests for production to Jimmy on October 12, 2005 to determine the existence
and value of any property Jimmy claimed to be separate property.  The appellate
record does not contain Jimmy=s responses to these discovery requests.

Sylvia filed her inventory and appraisement on March 28, 2007. 
She identifies Jimmy=s Central Pension benefits as part of the
community estate in her inventory.  Sylvia describes this pension as being
administered by Central Pension and paid to employee Jimmy Zamarripa in the
form of A[r]etirement of
$2,600.95 per month as of December 31, 2005.@  All other
information about the pension is stated to be A[u]nknown@ to Sylvia. 
Sylvia=s inventory also
states that Jimmy=s separate estate is unknown to Sylvia.

Jimmy filed his inventory and appraisement on April 11,
2007.  He also identifies his Central Pension benefits as part of the community
estate.  Jimmy states that he began receiving pension benefits on June 2, 2003,
and describes these benefits as A[r]etirement of
$2,603.90 per month as of January 1, 2007.@  Jimmy=s inventory
describes as A[u]nknown@ Jimmy=s percentage of
vesting, the value of the community interest in his pension benefits, and the
method of computation.  Jimmy did not identify any portion of his pension
benefits as part of his separate estate, but he did list several items of
personal property as his separate property.

On April 19, 2007, Jimmy and Sylvia signed a mediated
settlement agreement for a partial divorce settlement.  This agreement required
Jimmy to produce to Sylvia Acurrent statements on [Jimmy=s] pension showing
account values@ by May 1, 2007.  The appellate record does not
contain these statements. 








Sylvia filed a proposed division of property and debts on
August 14, 2007, in which she proposed that half of Jimmy=s pension benefits
be awarded to her in the divorce.  Jimmy did not file a proposed division of
property with the trial court.

Jimmy testified at trial that he began contributing to his
pension fund 10 years before marrying Sylvia in 1984, and that he contributed
$24,000 toward his pension before the marriage.  No documentation tracing this
asserted $24,000 contribution was offered to corroborate Jimmy=s testimony. 
Jimmy=s trial counsel
later stated during questioning: ANow, let=s go to your
retirement accounts because that=s joint property.@  Jimmy did not
refute this statement in answering his trial counsel=s question.  Jimmy
further testified that he paid his trial counsel from his pension benefits,
which he did not consider to be community property.  Jimmy later testified that
he began contributing to his pension fund in 1970.

Sylvia testified that she had accessed information about
the form and duration of Jimmy=s pension through a website.  Sylvia
further testified that Jimmy had provided to her no documentation to show that
he had ever checked information about his pension=s form or duration
through the website.  Sylvia also testified that Jimmy had not informed her of
the amount he had accrued in his pension.  Sylvia stated that Jimmy began contributing
to his pension 10 years before they married in 1984, and that she considered
the value of those 10 years to be Jimmy=s separate
property.  Sylvia also testified that Jimmy=s average annual
income more than doubled from the 1993-1998 period to the 1999-2003 period. 
Following Sylvia=s testimony, the trial court took judicial
notice of Jimmy=s first amended petition seeking divorce
and the absence therein of any pleading for separate property.  








The trial court signed its final divorce decree awarding
Sylvia half of Jimmy=s entire pension benefits on November 2,
2007.  Jimmy timely filed a motion for new trial on November 27, 2007.  On
December 4, 2007, the trial court signed a Qualified Domestic Relations Order (AQDRO@) informing
Central Pension of its obligations under the divorce decree.  This QDRO states
that Sylvia is to receive half of Jimmy=s Amonthly retirement
benefit amount,@ and that Jimmy=s participation in
the pension fund lasted from June 1, 1970 until he received his first benefits
on June 1, 2003.  

The trial court held a hearing on Jimmy=s motion for new
trial on December 6, 2007, and signed an order denying the motion on December
21, 2007.  The trial court signed an amended QDRO to the same effect as the
first one on February 28, 2008.  Jimmy appeals from the trial court=s November 2, 2007
final divorce decree.

Analysis

Jimmy does not challenge on appeal the trial court=s division of
community property.  Rather, he challenges the trial court=s legal conclusion
characterizing all of his pension benefits as community property subject to
division by the court.  Jimmy asserts that the trial court erred by
characterizing as community property that portion of his pension benefits
attributable to contributions he made before marrying Sylvia in 1984.  The
dispositive issue on appeal is whether Jimmy overcame the presumption of
community property by proffering clear and convincing evidence establishing the
separate character of the disputed asset.

A.      Definitions
and Standard of Review

Characterization of marital property is a conclusion of
law.  See Carter v. Carter, 736 S.W.2d 775, 777 (Tex. App.CHouston [14th
Dist.] 1987, no writ).  We review the trial court=s conclusions of
law de novo.  Stavinoha v. Stavinoha, 126 S.W.3d 604, 608
(Tex. App.CHouston [14th Dist.] 2004, no pet.); Zagorski v.
Zagorski, 116 S.W.3d 309, 314 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied) (opinion on rehearing).  We review conclusions of law
to determine whether they are correct based on the facts of the case.  Stavinoha,
126 S.W.3d at 608; Zagorski, 116 S.W.3d at 314.  We will uphold a trial
court=s conclusions of
law if the judgment can be sustained on any legal theory supported by the
evidence.  Stavinoha, 126 S.W.3d at 608; Zagorski, 116 S.W.3d at
314. 








Separate property is that property owned by a spouse before
marriage; acquired during the marriage by gift, devise, or descent; or as a
recovery for personal injuries sustained during the marriage.  Stavinoha,
126 S.W.3d at 607; see also Tex. Const. art. XVI, _ 15; Tex. Fam.
Code Ann. _ 3.001 (Vernon 2006).

Community property is that property, other than separate
property, acquired by either spouse during marriage.  Tex. Fam. Code Ann. _ 3.002 (Vernon
2006); Barnett v. Barnett, 67 S.W.3d 107, 111 (Tex. 2001); Stavinoha,
126 S.W.3d at 607.  All property possessed by either spouse during or on
dissolution of marriage is presumed to be community property.  Tex. Fam. Code
Ann. _ 3.003(a) (Vernon
2006); Barnett, 67 S.W.3d at 111; Stavinoha, 126 S.W.3d at 607.

To overcome the community property presumption, a spouse
claiming assets as separate property must establish their separate character by
clear and convincing evidence.  Tex. Fam. Code Ann. _ 3.003(b); Stavinoha,
126 S.W.3d at 607; Zagorski, 116 S.W.3d at 314.  Clear and convincing
evidence means the measure or degree of proof that will produce in the mind of
the finder of fact a firm belief or conviction as to the truth of the
allegations sought to be established.  Tex. Fam. Code Ann. _ 101.007 (Vernon
2009); In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002); Stavinoha,
126 S.W.3d at 607.  This evidence must generally trace and clearly identify the
property as separate.  Evans v. Evans, 14 S.W.3d 343, 346 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).

The clear and convincing burden is not satisfied when
characterizing the property at issue as separate property requires surmise or
speculation by the court.  See McKinley v. McKinley, 496 S.W.2d 540, 544
(Tex. 1973); Courtney v. Courtney, No. 14-01-01103-CV, 2002 WL 1732996,
at *4 (Tex. App.CHouston [14th Dist.] July 25, 2002, no
pet.) (not designated for publication).  Any doubts as to the character of
marital property must be resolved in favor of the community property
presumption.  See Courtney, 2002 WL 1732996, at *5.








If the evidence shows separate and community property have
been so commingled as to defy resegregation and identification, the clear and
convincing evidentiary burden has not been met and the community presumption
prevails.  Zagorski, 116 S.W.3d at 316.  Testimony that some portion of
commingled property is separate property, standing alone, is insufficient to
rebut the community property presumption.  See id. 

As a general rule, the clear and convincing standard is not
satisfied by testimony that funds possessed at the time the marriage is
dissolved are separate property when that testimony is contradicted or
unsupported by documentary evidence tracing the asserted separate nature of the
funds.  See, e.g., Rogers v. Rogers, No. 14-00-00077-CV,
2001 WL 1013405, at *3 (Tex. App.CHouston [14th
Dist.] Sept. 6, 2001, pet. denied) (mem. op., not designated for publication) (A[wife=s] contradictory,
vague, and equivocal testimony, without more, was insufficient for a reasonable
jury to determine under the clear and convincing standard that the funds, at
their inception, were her separate property@; evidence made it
Aimpossible to
accurately segregate and identify which portions of the account belong to whom@); Brehm v.
Brehm, No. 14-99-00055-CV, 2000 WL 330076, at *3 (Tex. App.CHouston [14th
Dist.] Mar. 30, 2000, no pet.) (not designated for publication) (husband=s testimony that
he purchased certificate of deposit with separate assets, without documentary
evidence tracing the supposedly separate funds, held insufficient to rebut the
community property presumption notwithstanding wife=s failure to provide
controverting testimony); In re Marriage of Santopadre, No.
05-07-00027-CV, 2008 WL 3844517, at *3 (Tex. App.CDallas Aug. 19,
2008, no pet.) (mem. op., not designated for publication) (husband=s failure to
produce documentary evidence establishing the time and means by which he
originally obtained possession of assets C including a
pension C precluded trial
court from finding that husband met clear and convincing standard
notwithstanding husband=s testimony that the assets were his
separate property).

B.      Jimmy
Failed to Rebut Community Property Presumption








It is undisputed that the portion of Jimmy=s pension benefits
attributable to contributions made after his 1984 marriage to Sylvia is
community property.  Jimmy argues on appeal that the portion of his pension
benefits attributable to contributions made before the marriage is his separate
property.  Sylvia contends that Jimmy failed to overcome the community property
presumption and establish by clear and convincing evidence the portion of his
pension benefits attributable to pre-marriage contributions.








The parties assume that the trial court treated Jimmy=s entire pension
as community property subject to division by the court.[1] 
See Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985); Slaton v.
Slaton, 987 S.W.2d 180, 182 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied).  Jimmy did not request findings of fact or
conclusions of law from the trial court, and the court filed none.  It
therefore is implied that the trial court found that Jimmy failed to meet his
burden to rebut the community property presumption with clear and convincing
evidence of the disputed asset=s separate character.  See Mays v.
Pierce, 203 S.W.3d 564, 571 (Tex. App.CHouston [14th
Dist.] 2006, pet. denied).[2] 
Because Jimmy has provided this court with a complete reporter=s record, he may
challenge the legal and factual sufficiency of the trial court=s implied finding
that he failed to meet his heightened evidentiary burden.  See id. 

We first address the legal sufficiency of the evidence to
support the trial court=s finding that Jimmy failed to rebut the
community property presumption with clear and convincing evidence of the
disputed asset=s separate character.  Both Jimmy and Sylvia
identified the entirety of Jimmy=s pension benefits
as part of the community estate in their respective inventories and
appraisements.  Jimmy did not identify any portion of his pension benefits as
separate property in his original or amended petition for divorce.  Jimmy
supplied the court with no documentary evidence corroborating his separate
property claim or tracing any amount of asserted pre-marriage contributions. 
The credibility of Jimmy=s and Sylvia=s testimony and
the resolution of any conflicts in the evidence was under the trial court=s purview.  See
Zagorski, 116 S.W.3d at 318-19.  On this record, we conclude that the
evidence is legally sufficient to support the trial court=s implied finding
that Jimmy did not meet his burden of proof to present clear and convincing
evidence sufficient to overcome the community property presumption. 








The following evidence speaks to the factual sufficiency of
the evidence supporting the trial court=s finding that
Jimmy did not meet his burden of proof to present clear and convincing evidence
sufficient to overcome the community property presumption: (1) Jimmy did not
identify any portion of his pension benefits as separate property in his
original or amended petition seeking divorce; (2) Jimmy and Sylvia identified
Jimmy=s pension as
community property in their respective inventories and appraisements; (3) Jimmy
did not list any portion of his pension benefits as separate property in his
inventory and appraisement, but did list several other items; (4) Jimmy and
Sylvia testified that he began contributing to his pension fund 10 years before
marriage; (5) Jimmy also testified that he began contributing to his pension in
1970 (14 years before marriage) and had contributed $24,000 toward his pension
before marriage; (6) Sylvia testified that Jimmy did not tell her how much
money he had accrued in his pension; and (7) Jimmy failed to provide Sylvia or
the court with any documentation corroborating his testimony about pre-marriage
contributions or tracing the amount of any pre-marriage contributions.

Standing alone, Jimmy=s and Sylvia=s imprecise and
contradictory testimony fails to rebut the community property presumption in
light of the pleadings before the court identifying the entirety of Jimmy=s pension benefits
as community property.  See Zagorski, 116 S.W.3d at 316; see also
Rogers, 2001 WL 1013405, at *3; Brehm, 2000 WL 330076, at *3; In
re Marriage of Santopadre, 2008 WL 3844517, at *3.[3] 
In addition, because the trial court was left to speculate about which portion
of Jimmy=s pension
benefits, if any, was separate property, the trial court was obligated to
resolve all doubts in favor of the community property presumption.  See
Courtney, 2002 WL 1732996, at *4-*5.  

On this record, we conclude that the evidence is factually
sufficient to support the trial court=s implied finding
that Jimmy did not meet his burden of proof to present clear and convincing
evidence sufficient to overcome the community property presumption.








Our conclusions regarding the legal and factual sufficiency
of the evidence to support the trial court=s implied finding
are underscored by In re Marriage of Santopadre.  In that case, the
parties were married in September 1996 while the husband was working for Texas
Instruments.  In re Marriage of Santopadre, 2008 WL 3844517, at *1.  Two
years later, the husband took early retirement from Texas Instruments.  Id. 
The wife filed for divorce in 2000 and a final divorce decree was signed in May
2004 after a bench trial.  Id.  This final divorce decree awarded 10
assets to the husband as his separate property, including certain real property
in New Mexico; Texas Instruments stock; and the husband=s Texas
Instruments retirement benefits and employee pension plan.  Id. at *3.








On appeal, the wife challenged the trial court=s characterization
of the 10 assets as separate property.  Id.  The husband introduced only
three exhibits at trial: (1) a one-page summary regarding the purchase and
financing of the New Mexico property; (2) an e-mail between the parties
regarding the sale of stock valued at $5,000; and (3) the wife=s inventory and
appraisement.  Id. at *3 n.1.  The husband testified that all of the
assets were his separate property, but he presented no deeds, closing
statements, property tax statements, financial records, or other documents
indicating when these assets were acquired or established.  Id. at *3. 
The Dallas Court of Appeals reversed the trial court=s judgment because
(1) the clear and convincing evidence standard required the husband to Ashow the time and
means by which he originally obtained possession of each asset@; and (2) the
evidence produced at trial was legally and factually insufficient to establish
by clear and convincing evidence that the 10 assets were his separate
property.  Id.; see also Rogers, 2001 WL 1013405, at *1, *3
(evidence was sufficient to support trial court=s conclusion that
wife failed to establish that Merrill Lynch account opened during marriage was
her separate property despite (1) husband=s concession that
the funds originally belonged to his wife=s mother, and (2)
wife=s testimony that
these funds were given to her through gift or inheritance; wife=s testimony and
the Afew limited and
incomplete documents@ admitted into evidence did not trace or
clearly identify the funds in the account as her separate property).[4]

We conclude that the evidence before the trial court was
legally and factually sufficient to support the trial court=s implied finding
that Jimmy did not meet his burden of proof to present clear and convincing
evidence sufficient to overcome the community property presumption with respect
to his pension benefits.  See id. at 608; Zagorski, 116 S.W.3d at
314.  Because this finding supports the trial court=s legal conclusion
that all of Jimmy=s pension benefits are community property,
we must allow this legal conclusion to stand.  See Stavinoha, 126 S.W.3d
at 608; Zagorski, 116 S.W.3d at 314.[5]








C.      Jimmy Did
Not Establish That His Pension Is a Defined Benefit Plan

Jimmy also asserts that (1) his pension is a defined
benefit plan; and (2) the characterization of his separate property interest is
controlled by statute.[6] 
See Tex. Fam. Code Ann. _ 3.007(a), (b) (Vernon 2006).

Under section 3.007(a), a spouse who is a participant in a
defined benefit plan Ahas a separate property interest in the
monthly accrued benefit the spouse had a right to receive on normal retirement
age, as defined by the plan, as of the date of marriage.@  Id. _ 3.007(a).  AThe community
interest in a defined benefit plan shall be determined as if the spouse began
to participate in the plan on the date of marriage and ended that participation
on the date of dissolution or termination of the marriage.@  Id. _ 3.007(b).








The trial court had before it the following evidence
addressing the nature of Jimmy=s retirement plan: (1) Sylvia=s inventory and
appraisement listing Jimmy=s pension under the heading of ACompany Retirement
Benefits@ as A[r]etirement of
$2,600.95 per month@ administered by Central Pension; (2)
Jimmy=s inventory and
appraisement listing Jimmy=s pension under the heading of ARetirement
Benefits C IRA/SEP@ as A[r]etirement of
$2,603.90 per month@ administered by Central Pension; (3) the
admission of both parties in their respective appraisements that they did not
know the value of the community interest in Jimmy=s pension or the
method of computation of the amount of his pension; and (4) Jimmy=s testimony that
his pension paid him a monthly benefit after he retired.  Jimmy never invoked
the term Adefined benefit plan@ or section 3.007
until the hearing on his motion for new trial.

Jimmy asserts that the evidence listed above established
that his pension was a defined benefit plan subject to division under sections
3.007(a) and (b).  Jimmy predicates his argument on Smith v. Smith, 22
S.W.3d 140, 148 (Tex. App.CHouston [14th Dist.] 2000, no pet.)
(opinion on rehearing), in which we described a defined benefit plan as one
that promises employees a monthly benefit beginning at retirement.  Jimmy
misplaces his reliance on this description because a defined contribution plan
also may be paid as an annuity through which a retiree receives a monthly
benefit.  See Vickery v. Vickery, 999 S.W.2d 342, 350 (Tex. 1999)
(annuity may be distributed in monthly payments); Steven R. Brown, An
Interdisciplinary Analysis of the Division of Pension Benefits in Divorce and
Post-Judgment Partition Actions, 37 Baylor L. Rev. 107, 114 (1985) (defined
contribution plan may be paid in the form of an annuity or a lump-sum payment).

Therefore, even taking as a given that Jimmy=s pension is paid
to him as a monthly benefit, this fact by itself does not determine whether the
pension is a defined benefit plan, a defined contribution plan, or some other
type of retirement plan.  See Vickery, 999 S.W.2d at 350; Brown, 37
Baylor L. Rev. at 112-17.  Furthermore, Jimmy did not invoke section 3.007 or
the term Adefined benefit plan@ below to make the
trial court aware of his assertion that his pension was such a plan governed by
sections 3.007(a) and (b) until his motion for new trial.  Jimmy=s inventory listed
his pension under the heading of ARetirement
Benefits C IRA/SEP.@  This record left
the trial court to speculate regarding the nature of Jimmy=s retirement plan.[7] 









On this record, Jimmy has not established that his pension
is a defined benefit plan.  See McKinley, 496 S.W.2d at 544; Courtney,
2002 WL 1732996, at *4-*5.  Therefore, he cannot rely on section 3.007 to
establish his separate property interest in the pension benefits.  See
Courtney, 2002 WL 1732996, at *4-*5; In re Marriage of Santopadre,
2008 WL 3844517, at *3.

We overrule Jimmy=s issue regarding
the trial court=s characterization of his entire pension
fund as community property.

Conclusion

The trial court=s judgment is affirmed.

 

 

 

 

/s/        William J. Boyce

Justice

 

Panel consists of Justices Anderson,
Guzman, and Boyce.









[1]           The divorce decree does not explicitly
characterize Jimmy=s pension as community property; rather, the decree
simply includes the entire pension as part of Athe parties= marital estate@
and awards each party half of the pension pursuant to the Ajust and right division of the parties= marital estate.@ 
Both parties assume that the trial court found Jimmy=s entire pension to be community property and divided
it equally.  But this assumption is unnecessarily broad.  Contrary to the
parties= assumptions, the trial court=s division of Jimmy=s
pension is not inconsistent with the testimony of both parties that part of the
pension is Jimmy=s separate property.

This is more easily seen by first noting that the
trial court prefaced the property division with the statement that it was
making a disproportionate division of the marital estate.  In awarding Jimmy
half of the pension, the trial court did not expressly characterize Jimmy=s share as separate property, community property, or
both.  Thus, even assuming that the trial court found part of the pension to be
Jimmy=s separate property, Jimmy still cannot demonstrate
that he was divested of separate property unless the amount of the pension
benefit attributable to his pre-marriage contribution exceeds the amount he
actually received in the judgment.

To illustrate, let us assume that 25 percent of the
pension was Jimmy=s separate property and 75 percent of it was community
property.  If the community property were divided equally, Sylvia would have
gotten 37.5 percent of the pension benefit (i.e., half of 75 percent) and Jimmy
would have received 62.5 percent (i.e., half of 75 percent plus his separate
property of 25 percent).  But by dividing the marital estate
disproportionately, the trial court in this example could award Sylvia as much
as 75 percent of the pension benefit (representing the entire community
interest in the pension, and none of Jimmy=s
separate property) and award Jimmy only 25 percent (representing his entire
separate property interest, and none of the community property).

Because the judgment is affirmed on any
legal theory supported by the record, and Jimmy does not challenge the
disproportionate division of the marital estate, his arguments that the trial
court improperly characterized the pension benefits and divested him of his
separate property must fail unless the record conclusively establishes that more
than half of the pension should have been characterized as Jimmy=s separate property.  But Jimmy has not taken that
position, at trial or on appeal, and the record supports the trial court=s implied finding that Jimmy=s separate property interest in the pension does not
exceed 50 percent. 





[2]           When no findings of fact or conclusions of
law are filed or properly requested in a non-jury trial, we imply that the
trial court made all necessary findings to support its judgment.  See Mays, 203 S.W.3d at 571.  Sylvia urges us to affirm based upon Jimmy=s failure to explicitly challenge a specific finding
of fact.  See Zagorski, 116 S.W.3d at 319.  Because we must generously
construe our briefing rules, we conclude that Jimmy=s original appellate brief adequately described
his challenge as encompassing the legal and factual sufficiency of the trial
court=s implied finding that he failed to meet his
evidentiary burden.  See Tex. R. App. P. 38.9. 





[3]           Jimmy urges us to construe as a Ajudicial admission@
Sylvia=s testimony that (1) Jimmy began contributing to his pension 10 years before
they married, and (2) she considered the value of contributions made during
those 10 years to be Jimmy=s separate property.  We need not decide whether this testimony
constituted a judicial admission because Jimmy=s failure to provide corroborating documentary
evidence rendered unduly speculative any
effort to overcome the community property presumption and specifically
apportion pension assets between community property and separate property.  See Zagorski, 116 S.W.3d at 316; Rogers,
2001 WL 1013405, at *3; Brehm, 2000 WL 330076, at *3; In re Marriage
of Santopadre, 2008 WL 3844517, at *3.  





[4]           See also Osorno v. Osorno, 76 S.W.3d 509, 512 (Tex. App.CHouston [14th Dist.] 2002, no pet.)
(husband=s testimony insufficient to meet
clear and convincing evidence standard in absence of deposit slips or bank
records tracing source of funds); Boyd v. Boyd, 131 S.W.3d 605, 616
(Tex. App.CFort Worth 2004, no pet.) (clear
and convincing evidence standard not met where husband failed to present
specific tracing testimony or corroborating testimony or evidence of nature of
real and personal property); Ganesan v. Vallabhaneni, 96 S.W.3d 345, 354
(Tex. App.CAustin 2002, pet. denied) (clear
and convincing evidence standard not met where husband=s testimony and exhibits offered
failed to Aprovide account numbers, statements
of accounts, dates of transfers, amounts transferred in or out, sources of
funds or any semblance of asset tracing@); Bahr v. Kohr, 980 S.W.2d 723, 728-29 (Tex. App.CSan Antonio 1998, no pet.) (wife=s testimony insufficient to meet
clear and convincing evidence standard because documentary evidence offered did
not show date account was opened, running balance of account, or identity of party
receiving wire transfer for asserted purchase of property at issue); Robles
v. Robles, 965 S.W.2d 605, 616 (Tex. App.CHouston [1st Dist.] 1998, pet. denied) (husband=s testimony insufficient to meet
clear and convincing evidence standard where husband provided no supporting
documentary evidence to trace funds used to purchase property); In re
Marriage of Moore, 890 S.W.2d 821, 837 (Tex. App.CAmarillo 1994, no pet.) (clear and
convincing evidence standard not met by husband=s testimony that he owned certain farm equipment
prior to marriage where he failed to trace such equipment from that time to the
time of the divorce proceeding). 





[5]           Jimmy also asserts that the trial court
acted without jurisdiction and its action is void because the court lacked the
authority to divest him of his separate property.  See Slaton, 987 S.W.2d at 182.  AJurisdiction@ refers to a court=s authority to adjudicate a case.  Reiss
v. Reiss, 118 S.W.3d 439, 443 (Tex. 2003).  In general, as long as the
court entering a judgment has jurisdiction over the parties and the subject
matter and does not act outside its capacity as a court, the judgment is not
void.  Id.  The proper means of challenging errors other than lack of
personal or subject matter jurisdiction is through the appellate process.  See
id.  Barring lack of personal or subject matter jurisdiction, a trial court
has jurisdiction to characterize property as separate or community property,
even if it does so incorrectly.  See id.  Because Jimmy does not
challenge the trial court=s jurisdiction over the parties or
subject matter of the case, and instead challenges the trial court=s assertedly erroneous
characterization of his entire pension as community property, his
jurisdictional argument fails.  See id.





[6]           The two principal types of qualified
private pension plans are defined benefit plans and defined contribution
plans.  Steven R.
Brown, An Interdisciplinary Analysis of the Division of Pension Benefits in
Divorce and Post-Judgment Partition Actions, 37 Baylor L. Rev. 107, 112
(1985).  Under a defined benefit plan,
the future benefit to be received is specified in advance and Adefined@ by
a benefit formula or benefit schedule, and plan contributions are made as
required to fund the specified benefit.  Id.  Under a defined
contribution plan, the contributions to the fund are specified and Adefined@
but there is no predetermined scale of benefits, and the benefit amount
received by the retiring employee is determined by the accumulated
contributions allocated to that employee at retirement.  Id.  Both plans
may be contributory or non-contributory, but in a defined benefit plan
individual account balances need not be maintained for each participant.  Id.
at 115.  In a defined benefit plan, the future benefit to be received is
specified in advance according to one of four basic formulas or some
combination thereof: (1) a flat amount formula; (2) a flat percentage of
earnings formula; (3) a flat amount per year of service formula; or (4) a
percentage of earnings per year of service formula.  Id. at 115-16.





[7]           If the trial court had concluded that Jimmy=s pension was in fact a defined
benefit plan subject to division under sections 3.007(a) and (b), Jimmy
contends it would have been required to characterize a substantial fraction of
that pension as his separate property.  See Tex. Fam. Code Ann. _ 3.007(a); In re Marriage of
Santopadre, 2008 WL 3844517, at *3. 
According to the formula described in section 3.007, this fraction would have
been determined by dividing the number of years of Jimmy=s participation in the defined benefit plan prior to
marriage by his total number of years of participation in the plan; this value
would represent the percentage of the pension characterized as Jimmy=s separate property.  See Tex. Fam. Code Ann. _ 3.007(a), (b); In re Marriage
of Santopadre, 2008 WL 3844517, at *3.