Affirmed and
Memorandum Opinion filed February 23, 2010

 

In
The

Fourteenth
Court of Appeals

                                                             
____________

14-08-00221-CV

___________

 

Tammy C. Jensen, Appellant 

v.

Barry Dale Jensen, Appellee 



On Appeal from
the 328th District Court

Fort Bend County, Texas

Trial Court
Cause No. 07-CV-157197



 

MEMORANDUM OPINION 

Appellant Tammy C. Jensen
appeals the property division in a divorce case.  Tammy contends that the
evidence does not support several of the trial court’s findings of fact and
that these findings resulted in a manifestly unjust and unfair property
division.  She also contends that the trial court abused its discretion by
awarding Barry Jensen one-half of the shares of stock from one of her accounts
while allocating all of the associated debt to her and by denying her claim for
reimbursement of her separate funds used for the down payment on their
residence.  We affirm.




I

Tammy and Barry met in July
2001 and were married on July 19, 2003.  Their only child was born on July 7,
2004.  The Jensens separated in May 2007, and were granted a divorce on
November 20, 2007.  

Tammy and Barry are both
Canadian citizens.  When the couple met, Tammy had a degree in petroleum
engineering and had been working for Schlumberger for three years.  Barry had
been working as a credit analyst with DaimlerChrysler Financial in Canada for twelve
years.  Barry resigned his position before he married Tammy, and after they
were married, they moved to Brazil, where Tammy was working.  Tammy’s job
required that she travel frequently.  During their marriage, the couple lived
in four different countries—Brazil, Trinidad and Tobago, France, and the United
States.  In 2006, Tammy accepted a job offer with Hess Corporation in Houston
and the couple purchased a home in Fort Bend County.  Throughout the marriage,
Tammy worked continuously, except during her maternity leave, but Barry
remained unemployed.  

In May 2007, Barry left Tammy
and their child and went to Canada.  Shortly after that, he returned to Fort
Bend County and petitioned for divorce.  Tammy filed a counter-petition. 
Issues concerning the child and the property division were tried in a four-day
bench trial.  On February 28, 2008, the trial court signed the final decree of
divorce.  The trial court also made findings of fact and conclusions of law.  The
trial judge signed an amended final decree of divorce on September 9, 2008.  On
appeal, Tammy challenges only the property division.

II

Tammy
raises four issues: (1) the evidence does not support the trial court’s findings
of fact 12.a, d, f, and i concerning Barry’s employment decisions and
employment opportunities; (2) the trial court’s erroneous and unsupported
findings resulted in a manifestly unjust and unfair division of property; (3) the
trial court erred in awarding Barry one-half of her shares of stock from her
Mellon One account while allocating one-hundred percent of the debt encumbering
the account to her; and (4) the trial court erred in evaluating her claim for
reimbursement of $60,000 that she paid from separate funds for their
residence.  We will address the first three issues together, as Tammy does, and
separately address her fourth issue concerning reimbursement.

III

A

            The
Texas Family Code requires that the trial court “shall order a division of the
estate of the parties in a manner that the court deems just and right, having
due regard for the rights of each party and any children of the marriage.” 
Tex. Fam. Code Ann. § 7.001 (Vernon 2006).  The trial court has broad
discretion when dividing the marital estate.  Jacobs v. Jacobs, 687
S.W.2d 731, 733 (Tex. 1985).  We presume that the trial court did not abuse its
discretion in dividing the estate, and we will not disturb the division on
appeal unless appellant demonstrates a clear abuse of discretion.  Murff v.
Murff, 615 S.W.2d 696, 698 (Tex. 1981).  The trial court’s ultimate
division need not be equal, so long as it is equitable and so long as the court
has some reasonable basis for an unequal division.  Zieba v. Martin, 928
S.W.2d 782, 790 (Tex. App.—Houston [14th Dist.] 1996, no writ) (op. on reh’g). 


            A
trial court abuses its discretion when it acts arbitrarily or unreasonably, and
without reference to any guiding rules or principles.  Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990).  A trial court does not abuse its discretion
when it bases its decision on conflicting evidence, nor does a trial court
abuse its discretion when it bases its decision on some evidence of a
substantial and probative character.  Zieba, 928 S.W.2d at 787.  Under
this abuse-of-discretion standard, the legal and factual sufficiency of the
evidence are not independent grounds of error but are merely relevant factors
in assessing whether the trial court abused its discretion.  Id. at 786–87. 
The trial court’s judgment should be reversed on appeal when the trial court’s
abuse of discretion results in a division of property so disproportionate that
it is manifestly unjust and unfair.  See Hedtke v. Hedtke, 112
Tex. 404, 411, 248 S.W. 21, 23 (1923).  

B

            In her first three
issues, Tammy challenges the sufficiency of the evidence supporting the trial
court’s findings of fact 12.a, d, f, and i, and contends that these findings
resulted in a manifestly unjust and unfair division of property.  In reviewing
a trial court’s findings of fact, we apply the same standards that we apply in
reviewing jury findings.  Ulmer v. Ulmer, 130 S.W.3d 294, 299 (Tex.
App.—Houston [14th Dist.] 2004, no pet.).

            First, Tammy challenges
finding of fact 12.a, contending that the evidence does not support a finding
that “Barry Jensen would be unable to continue his education in Canada” and
noting that “[t]he proposition that there are numerous educational institutions
in Canada is self-evident and can be made no plainer by repetitions or
illustrations.”  But Tammy’s contention does not accurately reflect finding 12.a. 
Instead, the trial court found that Barry “would have benefited from the continuation
of the marriage as he had enrolled in college to continue his education and he
was attempting to gain the skills necessary to change his career to allow for
his possible future employment in the same industry and future pay scale as
[Tammy].”  The court also found that “[w]hen the parties separated, [Barry] had
to drop out of the program in the Houston area and return to Canada as he did
not have a legal right to remain in the United States once divorced because he
was in the Unites States under [Tammy’s] immigration status as a dependent.”  It
is evident that in its finding, the trial court was referring to the divorce-related
interruption in Barry’s education in Houston, and did not state or imply that
Barry would be unable to continue his education in Canada.  Further, the
finding is supported by Barry’s testimony that, before the divorce, he had
registered to attend Houston Community College for the 2007 fall semester to
advance his education and job skills, but has since withdrawn.  

            Tammy also complains of
the portion of finding 12.a that Barry did not have the legal right to remain in
the Unites States after the divorce because he testified that he could legally move
to Houston “for six months, then you have to return to Canada for a day and
then come back for another six months.”  Reviewed in context, however, Barry’s
testimony merely reflects that he was explaining a way in which he could change
his status.  Further, it was undisputed that he was allowed in the various
countries where he and Tammy lived based on a spousal visa, rather than his own
visa.  Therefore, the evidence is sufficient to support the trial court’s
finding of fact 12.a.

            Tammy next contends
that finding of fact 12.d—that Barry’s unemployment during the marriage was due
to the number of moves to foreign countries—is not supported by the evidence. 
The parties presented conflicting testimony on the reasons for Barry’s
unemployment.  Tammy testified that her employer, Schlumberger, provided job
search assistance, but to her knowledge, Barry never submitted a resume to Schlumberger. 
Tammy also testified that there were jobs available, included a listing with Barry’s
former employer DaimlerChrysler, but he refused to talk to DaimlerChrysler.  She
also testified that most spouses of Schlumberger employees that she knew in
Brazil worked.  When she went to work for Hess, Tammy testified, Hess provided
Barry with job counseling and other resources but he did not take advantage of
them.  In contrast, Barry testified that he registered with the
Schlumberger-related job listing service, but there were no suitable jobs
listed in Brazil.  He did not know of any spouses in Brazil who had obtained
jobs through the service.  Barry testified that, while in Brazil, he networked
with potential employers and others and enrolled in a Portuguese-language
course to improve his skills.  He also testified to various efforts he made to
find employment while the couple lived in Trinidad and Tobago, and he testified
that after he and Tammy moved to Fort Bend County, he made efforts to find
employment, including speaking with an immigration lawyer and applying for a
position with Amerada Hess.  Barry testified that he and Tammy had lived in
four different countries in their four-year marriage.  Further, Barry testified
that he did not have a work visa and was not allowed to work in those countries
with only a spousal visa.  The credibility of witnesses in a divorce action,
including the husband and wife, is solely under the purview of the trial court,
not an appellate court.  Zagorski v. Zagorski, 116 S.W.3d 309, 318 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh’g).  Here, the trial
court resolved the disputed evidence in Barry’s favor.  Based on our review of
record, the evidence is sufficient to support finding of fact 12.d.

            Tammy next contends
that finding 12.f is against the great weight of the credible evidence. 
Finding 12.f reflects the following:  “Prior to the marriage [Barry] was
employed in the finance industry and earning approximately $90,000.00 plus
benefits annually, but left his employment to support the development and
advancement of [Tammy’s] career.”  Tammy complains that the evidence, viewed as
a whole, instead “paints the picture of a man who simply showed no interest in
working and was perfectly content to live off the earnings of his wife.”  She specifically
points to her testimony that, in Brazil, Barry was not interested in working
for his former employer, DaimlerChrysler, or anyone else, and her testimony
that, even before the marriage, Barry took an extended leave of absence to live
with Tammy in Indonesia at a place paid for by her employer.

It
is undisputed that Barry worked as a credit analyst for DaimlerChrysler for
twelve years before the marriage.  He testified that that he gave up his career
for marriage because Tammy had been offered the position in Brazil and they
agreed that she should take the position to advance her career.  Barry also
testified that after he took the leave of absence to live with Tammy in
Indonesia, he returned to his work in Canada in December 2002, and did not
leave his job until July 17, 2003, two days before they married.  And, as
discussed above, Barry testified concerning his ultimately unsuccessful efforts
to obtain employment in the places he and Tammy lived.  Thus, although the
parties disputed whether Barry intended to work during the marriage and the
details of Barry’s employment history shortly before the marriage, the trial
court, as the fact finder, had the opportunity to observe the witnesses and
determine their credibility and the weight of the evidence.  See id.
at 318.  The evidence shows that the couple agreed that they would follow
Tammy’s job opportunity in Brazil to advance her career, and the trial court
reasonably could have found that that this choice eventually compromised
Barry’s own career path.  Therefore, finding of fact 12.f is supported by
sufficient evidence. 

Next,
Tammy contends that finding 12.i—that Tammy has greater earning power and
potential than Barry does—is “unsupported by the evidence.”  Tammy points to
that portion of finding 12.f in which the trial court found that Barry was
earning $90,000.00 plus benefits annually, and posits that this is evidence
that “if [Barry] wants to work and apply himself, he is certainly capable of
earning just as much as is his former wife.”  But this analysis fails to take
into account all of the relevant facts, including the evidence that Barry left
his career when he married Tammy, he gained no career experience during the
four-year marriage, and he lacked a college degree.  In contrast, Tammy had a
bachelor’s degree in engineering and was continuously employed as a petroleum
engineer with oil companies before and during the marriage.  This evidence is
sufficient to support the trial court’s finding.

Based
on the premise that the evidence was insufficient to support the trial court’s
findings of fact 12.a, d, f, and i, Tammy further contends that the trial
court’s property division was manifestly unjust and unfair.  To illustrate the
allegedly unjust and unfair division, Tammy argues that the trial court unfairly
awarded Barry fifty percent of the shares in her Mellon One account, but
allocated one-hundred percent of the debt encumbering the stock to Tammy.  But
we have determined that the trial court’s findings were supported by legally
and factually sufficient evidence; therefore, the premise upon which Tammy’s
argument is based must fail.  Moreover, although the trial court divided the
account’s 745 community shares roughly equally between the parties, with Barry
receiving 373 of these shares, Tammy fails to mention that the court awarded
her 1,015 of the shares in the account as her separate property as well as the debt. 
Barry was not awarded any ownership in, or future benefits from, Tammy’s
separate property shares.  Also, the trial court had before it testimony and
documentary evidence concerning any related debt.   A trial court’s
division of property “must take into consideration all the equities, the nature
of the property, [and] the debts secured by liens on the property awarded to each.” 
Walker v. Walker, 527 S.W.2d 200, 203 (Tex. Civ. App.—Fort Worth 1975,
no writ).  On this record, therefore, we cannot say that the trial court erred
in awarding the debt to Tammy. 

The
trial court is authorized to consider many factors, including the disparity of
the parties’ incomes and their earning capacities throughout the marriage, when
dividing the parties’ estate.  See Murff, 615 S.W.2d at 698–99.  Tammy
has not demonstrated that the trial court’s evaluation of the evidence resulted
in an abuse of discretion as required to overturn its property division.  See
id. Accordingly, we overrule Tammy’s first three issues. 

IV

In
her fourth issue, Tammy contends that the trial court erred in evaluating her
claim for reimbursement of $60,000.00 that she paid from separate funds for the
community residence.  Therefore, she argues, the trial court’s conclusion of
law 18, that Tammy “failed to offer evidence sufficient to support her claims
for reimbursement,” is contrary to the evidence and an abuse of discretion.  We
review the trial court’s conclusions of law de novo.  Stavinoha v. Stavinoha,
126 S.W.3d 604, 608 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

A

The
Texas Family Code defines separate property as that property owned by a spouse
before marriage, acquired during the marriage by gift, devise, or descent, or
as a recovery for personal injuries sustained during the marriage.  Tex. Fam.
Code Ann. § 3.001 (Vernon 2006).  In contrast, community property consists of
the property, other than separate property, acquired by either spouse during
marriage.  Tex. Fam. Code Ann. § 3.002 (Vernon 2006).  All property possessed
by either spouse during or on dissolution of marriage is presumed to be
community property.  Tex. Fam. Code Ann. § 3.003(a) (Vernon 2006).  

To
overcome the community-property presumption, a spouse claiming assets as
separate property is required to establish their separate character, not merely
by a preponderance of the evidence, but by clear and convincing evidence.  Tex.
Fam. Code Ann. § 3.003(b); Stavinoha, 126 S.W.3d at 607.  Clear and
convincing evidence means the measure or degree of proof that will produce in
the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established.  Stavinoha, 126 S.W.3d at 607. 


The
party seeking to rebut the community presumption must generally trace and
clearly identify property claimed as separate property.  McKinley v.
McKinley, 496 S.W.2d 540, 543 (Tex. 1973).  Mere testimony that the
property was purchased with separate funds, without any tracing of the funds,
is generally insufficient to rebut the presumption.  McElwee v. McElwee,
911 S.W.2d 182, 188 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

            Reimbursement
is an equitable right that arises when the funds or assets of one estate are
used to benefit and enhance another estate without itself receiving some
benefit.  Vallone v. Vallone, 644 S.W.2d 455, 458–59 (Tex. 1982).  The
party claiming the right of reimbursement has the burden of pleading and
proving that the expenditures were made and that they are reimbursable.  Id.
at 459.  Reimbursement is not available as a matter of law but lies within the
discretion of the court.  Id.  The discretion to be exercised in
evaluating a claim for reimbursement is equally as broad as the discretion
exercised in making a just and right division of the community estate.  Zieba,
928 S.W.2d at 787.

 

B

Tammy
argues that the trial court erred in evaluating her claim for reimbursement of
$60,000 she borrowed from her parents to make a down payment on the couple’s
home, on the basis that she repaid the loan from her separate property.  Tammy
contends that she repaid the loan from the parties’ joint Wells Fargo account,
into which she had transferred $36,706.52 from her Hansard International
account and $102,662.93 from her Schlumberger account.  She further contends
that the Hansard account was an investment account opened before the marriage. 
She acknowledges that some of the Schlumberger account contained funds that
accumulated during the marriage, but states that “the overwhelming majority . .
. was [acquired] prior to the marriage and [is] separate property.”  Tammy also
points to Barry’s admissions that the Hansard account was an investment account
she had before they married and that she took $36,000 out of that account and
put it in the joint account to pay back the loan.

Tammy’s
Schlumberger separation package consisted of pension-plan contributions,
medical, savings, insurance, and stock options, which accrued before and during
the marriage, and were paid out in a lump sum when she ceased working for the
company.  But, significantly, Tammy points to no evidence that shows what
portion of the Schlumberger deposit was her separate property and what portion
was earned by the community.[1] 
Tammy then deposited the money from both the Schlumberger and the Hansard
accounts into the couple’s Wells Fargo joint checking account, further
commingling them.  Tammy testified that this joint account was used for
community expenses as well as to pay back the loan.  Tammy and Barry disputed
whether separate or community money was used to pay for certain purchases and
expenses.  

Concerning the Hansard account, Tammy
testified that this was an investment fund account that required a deposit of
$1,000.00 per month for five years.  She opened the account in November 2001,
before the marriage.  Tammy testified that the Hansard account totaled
$56,000.00, $20,000.00 of which she accumulated before the marriage.  Over
time, all of the money was transferred to the Wells Fargo joint account.  Tammy
testified that “[w]e withdrew $39,000 and 3,000 of that was my separate
property money that we withdrew.”  Tammy thus appears to concede that $36,000
of the money from the Hansard account was community property.  The Wells Fargo
statement shows a deposit was made in July 2006 of $36,706.52 from Hansard into
the couple’s joint account.  This is the same $36,000 Barry was questioned
about on cross-examination. 

Thus,
the evidence concerning the separate character of the funds removed from the
couple’s joint account to repay the loan for the down payment on their home was
not clearly demonstrated.  To the extent that Schlumberger account funds may
have been used to repay the loan, Tammy produced no evidence to segregate what
portion of those funds belonged to her separate estate as opposed to the
community estate.  Tammy also conceded that at least $36,000 of the money in
her Hansard account was community money.  Further, the funds Tammy contends
were used to repay the loan were first deposited into the parties’ joint
checking account, further commingling them, and Tammy did not sufficiently trace
them.  See McKinley, 496 S.W.2d at 543–44.  Because Tammy failed to
demonstrate by clear and convincing evidence that she repaid the loan for the
down payment on the parties’ home with her separate funds, the trial court did
not abuse its discretion in concluding that she failed to offer sufficient
evidence to support her claim for reimbursement.  We overrule Tammy’s fourth
issue.

 

* * *

            The
trial court’s judgment is affirmed.

 

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

 

Panel
consists of Justices Yates, Frost, and Brown.









[1] Tammy
testified that she began working for Schlumberger in July 1998 and immediately
began contributing to the various benefits offered.  The parties married on
July 19, 2003, and the trial court found that Tammy deposited the lump sum
separation payment from Schlumberger into the parties’ Wells Fargo account “on
or about August 2, 2006.”  Schlumberger documents show Tammy’s length of
service to have been 7.8 years.  Thus, some evidence shows that Tammy was
married to Barry for about three years of the 7.8 years she worked for
Schlumberger.  However, Tammy presented no evidence segregating the amount or
type of benefits that would have accrued to the community during that time as
opposed to the period before the marriage.